# CHARLESTON.

PINE AND CYPRESS MANUFACTURING COMPANY *v.* AMERICAN ENGINEERING AND CONSTRUCTION COMPANY

Submitted October 21, 1924. Decided November 11, 1924.

1. SALES—*Lumber Consigned to Shipper Remains His Property Until Delivered to Another by Him or at His Direction.*

   Where lumber is shipped by a dealer, and is consigned to said dealer at a stated point, it remains the property of the dealer until it is delivered to another by the dealer or is so delivered by his direction. (p. 474).

2. Trover and Conversion—*Contractor Taking Possession of Lumber Without Authority from Owner Held Guilty of Conversion; Defendant Liable for Market Value at Time of Conversion, With Interest.*

Where a car load of lumber is unloaded and taken into possession by a contractor without any authority from the owner to do so, and the lumber is held by said contractor and treated as his own property for three months, by reason whereof the owner is deprived of his property, these acts of ownership constitute a conversion of said lumber by said contractor, and he will be liable in an action of assumpsit for the market value of the lumber at the time of the conversion, together with interest thereon from said time. (p. 474).

3. Same—*"Conversion" Defined.*

Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance. (p. 474).

Error to Circuit Court, Kanawha County.

Action by the Pine & Cypress Manufacturing Company against the American Engineering & Construction Company. Judgment for defendant, and plaintiff brings error.

*Reversed.*

*Morton, Mohler & Peters,* for plaintiff in error.
*Lon H. Kelly,* for defendant in error.

McGinnis, Judge:

This is an action of trespass on the case in assumpsit, brought by the plaintiff, Pine & Cypress Lumber Company, against the defendant, American Engineering & Construction Company, to recover from it the price of a car load of lumber valued at $2,000.00. Upon the plea of non-assumpsit the case was tried and a verdict rendered for the defendant. Motion was made by the plaintiff to set the verdict aside and grant it a new trial, which motion the lower court overruled, to which ruling the plaintiff excepted, and judgment thereon

entered in accordance with the verdict. The case comes here on a writ of error.

The material facts in the case are these: Robert Mankin and Luther Mankin were building contractors, engaged in the business as partners under the firm name of R. Mankin & Company. During the year of 1920, and for some time prior thereto, the said firm was engaged in the construction of some houses on Coal River for the Hazy-Eagle Collieries Company, at a place known as Hazy, which point is some four miles up Coal River from the station at Mont Coal, and some time in the month of April, 1920, they purchased from the Yellow Pine Lumber Company, a business concern located in the city of Charleston, West Virginia, and engaged in the business of buying and selling building materials, a car load of 1x4 No. 2 common pine flooring, at the price of $58.00 per thousand feet, to be delivered at Mont Coal, West Virginia. The Yellow Pine Lumber Company purchased from the plaintiff the flooring required to fill the order of R. Mankin & Company. The plaintiff on May 7th, 1920, shipped a car load of lumber in Rutland car No. 6471, containing 20,624 feet of 1x4 No. 2 common pine flooring, via the branch line of the C. & O. Ry. running up Coal River. The bill of lading showed that the car was shipped "To the order of the Pine & Cypress Manufacturing Company, Mont Coal. Notify Hazy-Eagle Collieries Company." This car load of lumber was not received by the consignee and after diligent search and inquiry had been made for the car from the time it should have arrived until July 24th, 1920, the Yellow Pine Lumber Company became convinced that it could not make delivery of the lumber and being so requested by the Mankin Company, it released the Mankin Company from further liability on their contract, and the plaintiff in turn released the Yellow Pine Lumber Company on its contract.

At the time R. Mankin & Company were engaged in the construction of the houses for the Hazy-Eagle Collieries Company, the defendant was also engaged in the building of houses for the Glogora Coal Company about one mile above Mont Coal. There were spur tracks at each of these two points and they were about three miles apart, each being on the said branch line, and these two contractors received and un-

loaded car load lots of materials from these two spur tracks,—the Mankin Company from the spur track at Hazy, and the defendant from the spur track at Glogora Coal Company, and at the time there were no stations at either of these two points and materials for both contractors were billed to Mont Coal, which was a non-agency stop. The spurs upon which car load lots of materials were to be placed were regulated from Whitesville, a station some distance below Mont Coal, and the conductors of the railway received written instructions from Whitesville directing them upon which spur track the materials were to be placed.

The car load of lumber in question was first set in at Hazy, on June 9th, 1920, but for some reason which the record does not disclose it was removed from that point to the spur track where the defendant was receiving and unloading its materials. The defendant after making some inquiry from one of the members of the railway crew who seemed to have something to do with these shipments, and after being informed by him that the car was the property of the defendant, the defendant's manager about June 14th, 1920, unloaded the lumber and stacked and carefully covered the same near the entrance of the spur track. The defendant completed its contract and did not use the lumber, and left it sometime in February, 1921, at the point where it was unloaded, and it remained there until sometime late in 1922. From the record it appears that the defendant's manager was not informed that the lumber did not belong to the defendant until about three months after it had been unloaded by him, that during all that time he treated the lumber as belonging to the defendant. On September 25th, 1920, the defendant, then doing business under the name of West Virginia Housing Company, wrote the Mankin Company: "We find upon investigation that we have unloaded a Rutland car No. 6471, by mistake. This car contained 20,644 feet of No. 2 common pine flooring, and was set in on the siding at Mont Coal." To this letter R. Mankin & Company on September 27th, 1920, answered as follows: "Replying to your letter of September 25th, you may take this matter up with the Yellow Pine Lumber Company of your city, who will put you in touch with the shippers of the car." It seems that the defendant failed

to follow this advice, and it does not appear in the record that the plaintiff was notified that the lumber was still intact, and stacked and taken care of by the defendant. The defendant unloaded the lumber and took possession of it and continued in possession thereof, exercised acts of ownership over the same, and treated said lumber as its own without making any inquiry in reference to it for over three months, and when the defendant completed its work at that point the lumber was left by it at the same point at which the car was unloaded. Sometime afterward the lumber was mysteriously removed by some one other than the plaintiff. We are of the opinion that these acts of ownership over the lumber by the defendant in consequence of which the plaintiff was deprived of its property amounted to and constituted a conversion of the lumber by the defendant. The defendant unloaded and took possession of this lumber without authority from the plaintiff, and for several months treated it as its own property; by these acts the defendant converted the lumber to its own use, and the tortious taking and holding the same could be waived and an action of assumpsit would lie for the market value of the lumber at the time the defendant took possession of it.

> *Wilson* v. *Shrader*, 73 W. Va. 113;
> *Sand Co.* v. *Smith*, 76 W. Va. 246;
> *Walker* v. *Ry. Co.*, 67 W. Va. 273-277.

> "Where conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance."
> 26 R. C. L., section 23.

> "Any distinct act of dominion wrongfully exerted over the property of another in denial of his rights or inconsistent therewith may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use."
> 26 R. C. L. section 25.   Cooley on Torts 859.

Many errors of the lower court are assigned by the appellant, the most important of which relate to the refusal of the court to give certain instructions offered by the plaintiff, and the giving of certain instructions offered by the defendant, over the objection of the plaintiff. We think the facts would have justified the court in giving an instruction to the jury to

find for the plaintiff the market value .of the lumber at the time defendant took possession of it, together with the interest thereon from that date, hence it will not be necessary to discuss or pass upon the other instructions offered by either party, for in this view of the case, upon a retrial other instructions would not be necessary. For the reasons above given the case is reversed, the verdict set aside and a new trial awarded.

*Reversed.*