# CHARLESTON.

WHOLESALE COAL COMPANY v. PRICE HILL COLLIERY CO.
COMPANY.

(No. 5216.)

Submitted January 27, 1925.      Decided March 10, 1925.

1. SALES—*Title Generally Passes to Consignee on Delivery to Carrier, With Sufficient Instructions to Enable Carrier to Move Shipment to Destination.*

   As a general rule, title passes from the shipper to the consignee upon delivery to the carrier of the lading with sufficient instructions to enable the carrier to move the shipment to destination. (p. 441).

2. TROVER AND CONVERSION—*Reconsignment by Seller Without Buyer's Consent, After Delivery to Carrier, Conversion.*

   The reconsignment of goods by the vendor, without consent of the purchaser, after title has passed to the purchaser by delivery to the carrier, constitutes a conversion. (p. 441).

3. SAME—*Damages for Conversion of Goods in Transit Market Value at Destination.*

   Ordinarily the measure of damages for the conversion of goods in transit is the market value at the point of destination, less freight. (p. 443).

4. SAME—*Damages for Conversion of Goods in Transit May be Fixed at Value in Market Accessible.*

   Where, however, the property cannot reach destination, the damages should be fixed at their value in a market accessible at the time of the conversion. (p. 443).

5. APPEAL AND ERROR—TRIAL—*Court Sitting as Jury Should Decline to Make Finding or Render Judgment Until it Has Settled Legal Question Which Occasioned Failure of Party to Introduce Evidence on Issue on Which Recovery Depends, and Given Parties Opportunity to Submit Evidence; Judgment of Court Sitting as Jury, without Giving Party Omitting to Introduce Evidence on Issue on Which Right of Recovery Depends Chance to do so, Will be Reversed.*

   If in a case submitted to the court in lieu of a jury for its finding on the question of fact, making the parties re-

spectively demurrant to the evidence and demurree, there has
been an omission under a misapprehension of law to introduce
any evidence on the issue upon which the right of recovery
depends, the trial court should decline to make its finding or
render judgment until it has settled the legal question in
which the omission was occasioned, and give the party in
default an opportunity to submit the evidence necessary to
sustain his case; and if not having done so it has rendered
judgment without development of the merits of the case upon
the proper theories, the judgment will be reversed and a new
trial awarded in furtherance of justice.   (p. 443.)

HATCHER, JUDGE, absent.

Error to Circuit Court, Raleigh County.

Action by the Wholesale Coal Company against the Price
Hill Colliery Company. Judgment for defendant, and plain-
tiff brings error.

*Reversed and remanded.*

*Conley* & *Johnson,* for plaintiff in error.
*Dillon, Nuckolls* & *Mahan,* for defendant in error.

LITZ, JUDGE:

The plaintiff, Wholesale Coal Company, a corporation,
suing in assumpsit, prosecutes error to the judgment of the
circuit court of Raleigh county on its findings in favor of
defendant.   The declaration contains the common counts,
and a special count averring that on the 10th day of July,
1922, the plaintiff purchased from the defendant, Price
Hill Colliery Company, 1050 tons of coal for immediate de-
livery at $3.50 per ton, f. o. b. mines, to be loaded in fifteen
railroad cars and consigned to the plaintiff, over the Chesa-
peake & Ohio Railway, Russell, Kentucky; that the defendant
promptly loaded the coal from its mines and delivered the
same to the Chesapeake & Ohio Railway Company, consigned
to the plaintiff at Russell, Kentucky, but after it had been
transported by the carrier from the mines of defendant in
Raleigh county to a point at or near Thurmond, Fayette
county, the defendant without the consent or knowledge of
plaintiff converted and appropriated to its own use thirteen
cars of the shipment, containing 910 tons of coal, whereby

the plaintiff sustained damages in the sum of $2275.00, the difference between the contract price and the market value at the time of the conversion.

.The defendant sets up two grounds of defense: (1) that the coal was never delivered or consigned to the plaintiff, therefore title to the property was not vested in it at the time of the alleged conversion; and (2) assuming ownership in the plaintiff, that defendant is not guilty of conversion. The case was submitted to the court in lieu of a jury upon evidence adduced and the following stipulation of counsel:

> "It is agreed that the plaintiff ordered from the defendant fifteen railroad cars of run of mine coal on the tenth day of July, 1922, which order the defendant accepted for immediate delivery, at the price of $3.50 per net ton f. o. b. mines, which was to be shipped by the defendant to the plaintiff, consigned to it at Russell, Kentucky, over the C. & O. Railway, that being the only railway over which the coal could be shipped. It is also agreed by the parties that the coal was mined beginning on the 11th day of July and closing on the 13th and placed in thirteen railroad cars,—the only number of cars now in question, and pulled down to Thurmond by C. & O. Railway on what is known as card billing. At the time the order was placed there was no specification as to size of cars, but it is now agreed by the parties that they were seventy-ton cars."

"Card billing" is a method of freight billing used by coal shippers in the territory embracing the defendant's mines, whereby the carrier accepts coal at the mines for transportation upon a card or memorandum furnished by the shipper giving the names of consignor and consignee, point of destination and such other information as will enable the railway company to carry the coal to its destination.

Immediately after being loaded the cars containing the coal in question were hauled by the railway company from the defendant's mines in Raleigh county to Thurmond, Fayette county, a distance of nine miles, to be there placed in a permanent train for shipment west, in order to reach Rus-

sell, Kentucky, but by reason of a strike among the employees of the railway company the coal could not be taken further west en route to that point. In the meantime the movement of the coal west was also hindered by an order of the Interstate Commerce Commission, requiring all railroads to give preference to movement of shipments to certain classes of consumers.

On August 2, 1922, the railway company advised the defendant that the coal could not be carried west, and on August 4th, demanded that defendant furnish instructions for reconsignment east, in order to help relieve the congested condition of the railway company's yards at Thurmond. Thereupon the defendant reconsigned the coal to its eastern customer, C. G. Sprague & Sons, Newport News, Virginia, under previous contract at $3.25 per ton. The railway company started the shipment east for delivery to the new consignee, but after taking it as far as Clifton Forge, Virginia, confiscated and appropriated the coal to its own use.

Upon this state of facts the defendant insists that notwithstanding the coal was sold f. o. b. mines and the carrier had accepted the shipment under instructions from the vendor to make delivery thereof to the vendee, title to the property had not passed at the time of the reconsignment. The only reason given for this contention is that under "card billing" title remained in the shipper as long as the coal was on the yards at Thurmond. There is no merit here. What difference did it make that the cars were assembled by the railway company at Thurmond before placing them in permanent trains for transportation? The coal having been loaded in cars on the tracks of the railway company, the furnishing to it of shipping instructions, no matter in what form, by the defendant constituted delivery to the ·plaintiff under the very terms of the sale. *Vaccaro Bros. & Co.* v. *Farris,* 92 W. Va. 655; 4 Elliott on Railroads, 3d Ed., p. 493, sec. 2127 (1414). The plaintiff then having become vested with title to the property, did the reconsignment thereof by the defendant constitute an act of conversion? The trial court dismissed the action on the ground that this did not amount to conversion.

Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion, and it is not necessary that the wrongdoer apply the property to his own use. *Pine & Cypress Mfg. Co.* v. *American Eng. & Const. Co.,* 97 W. Va. 471, 125 S. E. 375; Bowers on Conversion, Sec. 1; 28 Am. & Eng. Enc. of Law, 679; 26 R. C. L. "Trover", sec. 23, 25. Intermeddling with property of another, or the exercise of dominion over it, whether by the defendant alone or in connection with others, in denial of the owner's rights, is a conversion for which trover will lie though the defendant had not the complete manucaption of the property. *Milner & Kettig Co.* v. *Manufacturing Co.,* 139 Ala. 645, 36 South, 765, 101 Am. St. Rep. 63; *Webber* v. *Davis,* 44 Maine, 147, 69 Am. Dec. 88.

We are not concerned with the question of whether or not the defendant acted in good faith in reconsigning the shipment upon the railroad company's demand that some disposition be made of the shipment to relieve congestion. The primary as well as the ultimate fact to be determined is, has the defendant without rightful authority interferred with the chattels of plaintiff so as to hinder the latter in the full and free use, enjoyment and possession thereof? Since that fact exists the defendant is, in our opinion, guilty of a conversion. Conversion being proved, the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance on the part of defendant. *Pine & Cypress Manfg. Co.* v. *American Eng. & Const. Co.,* cited; Bowers on Conversion, Sec. 5.

The defendant has no just cause of complaint. It assumed control of the coal and reconsigned it to another purchaser without consulting the plaintiff or informing the railway company that the property belonged to the consignee. It also collected for the coal from the railway company. The plaintiff had no knowledge or information until after the reconsignment that the shipment could not move west and had been diverted by the defendant. Had it been so advised, likely it could have sold the coal in the eastern market.

What, then, is the measure of damages? Under the general rule, it is the value of the property at the time and place of conversion. 38 Cyc. 2092; Sutherland on Damages, 4 ed., Sec. 1109. It is held, however, that where the property is in transit the measure of damages should be its value at the point of destination, less freight. The reason upon which this is based is that if the rule were otherwise the owner would be forced to sell in a market which he had not chosen and where perhaps the property might be valueless, while it is safe to assume that in any case the goods will be worth as much at the place of destination as at the point of shipment. 26 R. C. L. p. 1149; 38 Cyc. p. 2094, note 60; 4 Sutherland on Damages, 4 ed., Sec. 1109. But we have a different case here. The coal could not reach its destination under the consignment to the plaintiff. The damages in such case should be the difference between the contract price, which was never paid, and the value of the coal f. o. b. mines in an accessible market at the time of the conversion. The plaintiff did not, however, show by sufficiently definite proof what the coal would have brought in an accessible market. Another trial, therefore, should be awarded for that purpose.

If in a case submitted to the court in lieu of a jury for its finding on question of fact, making the parties respectively dumurrant to the evidence and demuree, there has been an omission under a misapprehension of law to introduce any evidence on the issue upon which the right of the recovery depends, the trial court should decline to make its finding or render judgment until it has settled the legal question in which the omission was occasioned, and give the party in default an opportunity to submit the evidence necessary to sustain his case; and if not having done so it has rendered judgment without development of the merits of the case upon the proper theories, the judgment will be reversed and a new trial awarded in furtherance of justice. *Cook* v. *Raleigh Lumber Co.*, 74 W. Va. 503; *Labelle Iron Works* v. *Quarter Savings Bank,* 74 W. Va. 569.

The judgment of the lower court will be reversed, its finding set aside, and a new trial awarded.

*Reversed and remanded.*