GEORGE P. DAVIS, administrator, *vs.* H. S. & M. W. SNYDER, INC.

Suffolk.    January 29, 1926. — February 25, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Actionable Tort. Pleading, Civil*, Declaration.   *Agency. Negligence*, In transmitting instructions.

If a declaration in an action of tort is based on an act of the defendant alleged to have been committed on a certain date, a motion by the defendant to have struck from the declaration a recital of matters subsequent to that date and having no bearing on the alleged cause of action properly may be allowed.

If a principal, who, in accordance with instructions from an agent to whom he owed a commission, had transmitted sums due as commission to a bank to be there deposited to an account in the agent's name, later receives a cable message from the agent relating to the sums at the bank, which he transmits to the bank, leaving out a single letter "N," which stood alone and thus standing was meaningless, and innocently giving the cablegram a construction, which does not appear to be unreasonable in the circumstances but which was a mistaken construction and results in the bank sending the amounts on deposit to the agent in Russia where they were lost, the principal has committed no actionable wrong against the agent and is not liable to him or to his personal representative after his death in an action of tort.

CONTRACT, by an amendment allowed December 3, 1924, changed to CONTRACT or TORT, and by a further amendment allowed on July 1, 1925, changed to TORT. Writ dated April 11, 1924.

The action previously was before this court, when decisions favorable to the defendant were rendered, which are reported in 248 Mass. 387 and 252 Mass. 29.

A motion to strike out a portion of a declaration as amended on July 1, 1925, and a demurrer by the defendant to the amended declaration were heard by *Weed,* J. The motion was allowed, and the demurrer was sustained. The plaintiff appealed.

*E. F. McClennen,* for the plaintiff.

*J. E. Hannigan,* for the defendant.

CARROLL, J. This is an action of tort to recover for the alleged act of the defendant, on or about September 21, 1917, in directing the National City Bank at New York to cable certain money to one Tockel, in Russia, by reason of which Tockel lost the money. A part of the plaintiff's amended declaration was stricken out as immaterial and unnecessary; a demurrer to the remainder of the declaration was sustained. The plaintiff appealed from the order to strike out and from the order sustaining the demurrer.

The declaration as amended alleged that on September 21, 1917, the National City Bank at New York (hereinafter called the bank) received from the defendant checks amounting to $7,671.18, owed by the defendant to Marcus A. Tockel, as payment of commissions for the sale of leather; that the bank held the "said sum, the property of the said Marcus A. Tockel"; that in June, 1917, Tockel had directed that $3,602.32 of the amount owed be placed with the bank, and that he be advised; that the defendant sent a check for $3,602.32 to the bank, payable to it, with a letter requesting the bank to place the check to the account of Tockel, "pursuant to cables, copies of which appeared at the bottom of the letter"; that the cables referred to requested the deposit of the money; that the bank replied it had no account with Tockel and requested the defendant's advice; that the bank collected the check and credited amount to "Collection account, Foreign Exchange."

The declaration further alleged that in July, 1917, Tockel requested that the balance due him be placed with the bank, and that he be advised; that the defendant cabled, saying

it would deposit "additional 4080 dollars commission" on Thursday, "Advise National City disposition," and on July 14 sent a check for this additional sum to the bank, asking it by letter to hold the amount "in his [Tockel's] name, to his order, or to our order until further notice unless you have received direct notice from Mr. Tockel himself"; that the bank received the check, and in letter of acknowledgment stated that Tockel had no account and it had received no information from him, and asked the defendant's advice whether to cable this sum "through our correspondents in Moscow for Mr. Tockel or credited to our correspondent's account and advised by letter"; that the defendant replied there was no need of cabling Tockel, as the defendant had cabled him and he would doubtless write the bank what disposition he desired; that the bank placed the proceeds of the second check to "Sundries Account."

Further, that on July 5, 1917, an account in the name of Tockel was opened at the bank with a credit of $9,051.30 (money received from Howes Brothers, Boston) which ran as an open account until October 31, 1917, and the two remittances of the defendant were not placed in this account; that prior to July 5, 1917, Tockel had no account with the bank; that September 9, 1917, he cabled to the bank, asking what amounts had been received from the defendant, and "in reply received a cable stating that no payments had been received from Snyder"; that September 18, 1917, Tockel cabled the defendant this message:

"TWENTY ONE CHEVREAUCHROM INSTRUCTS TOMORROW NATIONAL PAY SEVEN HUNDRED THOUSAND AGAINST WAREHOUSE RECEIPTS STOP CONFIRM RECEIPT DEPOSITING COMMISSION NATIONAL CITY MY CURRENT ACCOUNT INDUCING THEM CABLE AMOUNT STOP NATIONAL CABLED N PAYMENTS RECEIVED FROM YOU FOR ME STOP ACCORDING YOUR TELEGRAMS DEPOSITED 7670."

The declaration then continues, "Thereupon . . . the defendant, without the knowledge, authority or consent of said Tockel, and contrary to his rights, directed the National City Bank to send . . . Tockel's . . . money to Russia; said direction being contained in letters copies whereof . . . are hereto annexed."

The first letter was from the defendant to the bank, asking it to cable Petrograd to accept seven hundred thousand rubles from Chevreau Chrom Shoe Factory, Moscow, against warehouse receipts and inclosing a copy of the cable of September 18, "advising us that he would like you to cable his account to your branch in Russia." In the copy of the cable the letter "N" after the words "National cabled," and preceding the words "payments received," was omitted. The second letter was from the bank to the defendant, and stated in substance, after a reference to the seven hundred thousand rubles, that it is unable to interpret the cable quoted, it is "holding the sum of $7,671.18 awaiting your orders," and asked if the money is to be cabled to Tockel and if the expense of remitting $7,671.18 through the Petrograd branch to Tockel is to be deducted or to be borne by the defendant. The third and last letter relied on was from defendant to the bank, saying that Tockel would pay the expense, requesting the bank to cable the money, and continuing: "We send you copy of cable exactly as received. To our minds it mean as follows: 'Our message 21. Chevreau Chrom instructs tomorrow National pay 700,000 against warehouse receipts stop confirm receipt depositing commission National City my current account inducing them cable amount stop National cabled payments received from you for me stop according your telegrams deposited 7670.'" The declaration then proceeds that the bank, wholly by the defendant's direction, sent the money to Russia without Tockel's knowledge, and that the money was thereby wholly lost to Tockel, to his damage.

Then follows the part of the amended declaration struck out. It relates to subsequent events and correspondence between the bank, the defendant and Tockel, and to cables between Tockel and the defendant, the amended declaration concluding that on the death of Tockel the plaintiff was appointed his administrator, and "claims to recover . . . the sum of seven thousand six hundred seventy-one dollars and eighteen cents ($7671.18), the damages sustained by said deceased," by reason of the wrongful act of the defendant on September 21, in depriving him of the money.

The matters alleged in the part of the declaration which was stricken out were immaterial and irrelevant. They had reference to events subsequent to the defendant's alleged tort and had no bearing on the plaintiff's cause of action. The plaintiff relied on the act of the defendant in September, 1917, in advising the bank to send the money to Russia, by reason of which advice the money was lost. The practice act requires that the substantial facts "necessary to constitute the cause of action" shall be set out in the declaration concisely and with substantial certainty. G. L. c. 231, § 7. Under this provision the part of the declaration stricken out was not necessary to make out the cause of action. *Carney* v. *Proctor*, 237 Mass. 203. See *Davis* v. *H. S. & M. W. Snyder, Inc.* 248 Mass. 387; *Davis* v. *H. S. & M. W. Snyder, Inc.* 252 Mass. 29.

The plaintiff's cause of action is based on the alleged wrongful action of the defendant in September, 1917. At this time the defendant had already sent the money due Tockel to the bank, (as requested by him), the bank had received the money and it was in its possession. It is not alleged that this money was held by the bank as a special deposit. The defendant paid its debt to Tockel by depositing the money with the bank. That was decided in *Davis* v. *H. S. & M. W. Snyder, Inc.* 248 Mass. 387. The bank accepted the money, being informed that the defendant had cabled to Tockel asking him to advise the bank as to its disposition. We do not think it necessary in view of all the facts alleged in the declaration to decide whether the money in the bank belonged to Tockel; it is alleged that the money was his property. For a case somewhat similar to the case at bar, where it was held that the bank became the debtor of the plaintiff when the money was left with it to be paid to the plaintiff, see *Heath* v. *New Bedford Safe Deposit & Trust Co.* 184 Mass. 481. Before the transaction of September 21, the bank had received, on September 9, a cable from Tockel asking what amounts had been received from the defendant, and although at that time it had received for Tockel the amount due for commissions, the bank cabled him that no payments had been received from the defendant. It is not

alleged that the defendant had any knowledge that the bank had sent this cable; therefore, when asked to explain the cable of September 18, from Tockel to it (which it had sent to the bank exactly as received with the exception that the letter "N" was omitted), the defendant again repeated the cable without the letter "N." No harm was done to Tockel by the omission of this letter. It does not appear with certainty what the significance of the letter "N" was. If it in fact meant that the bank cabled no payments received from the defendant for Tockel, the defendant did not know this. It did not know that the cable showing no payments had been sent to Russia, and in view of the fact that the money had been received by the bank, the defendant might well infer that this letter "N" was mistakenly inserted, or was meaningless. It could reasonably act as it did in the construction which it placed upon the message.

The plaintiff contends that the portion of the cable of September 18, preceding the words "National cabled N payments," deals with a sale to the Chevreau Chrom company and is unrelated to the transaction of the commissions due from the defendant to Tockel; that the latter part of the message gave no direction to cable the money due on commissions. It may be that Tockel so intended, but the words following "warehouse receipts stop" could fairly be interpreted as referring to the commissions in question. "Confirm receipt depositing commission National City my current account inducing them cable amount," together with the words following, might well be construed as asking for a confirmation of the deposit of the commissions and the request to have the sum cabled to Tockel, especially in view of the fact that Tockel had been notified of the deposit by the defendant. We do not understand that commissions were involved in the Chevreau Chrom transaction and no reference is made that any commissions as such were due the Chevreau Chrom company. Commissions were involved only in the dealings of Tockel with the defendant. This interpretation placed by the defendant on the cable was a reasonable one, and its letter to the bank was in accordance with its understanding of the request of Tockel.

If Tockel's cable requested the defendant to induce the bank to cable commissions to him, and the defendant did as requested, and the bank cabled the money, then the defendant did Tockel no wrong. If this was a reasonable construction of the cable, the defendant was guilty of no tort against Tockel. Even if such interpretation was erroneous, it is difficult to understand what tort the defendant committed. There was nothing showing or alleging its negligence. There was no conversion of the property of Tockel, no unlawful or malicious meddling with his property, and there was no fraud. Even if the defendant did make a mistake in its dealing with the bank, no tort against Tockel was committed by the defendant.

In *Varney* v. *Curtis*, 213 Mass. 309, 317, upon which the plaintiff relies, the bonds were deposited with one Symonds by the plaintiff. Symonds opened a margin account with the defendants delivering the bonds to the defendants as security. When Symonds paid the debt, the defendants delivered the bonds to persons who they knew were lending money to Symonds on this security. They aided Symonds in carrying through the act of dominion. This was a conversion, and "in that conversion the defendants participated for the purpose of forwarding their own interests." In *Fine Art Society, Ltd.* v. *Union Bank of London, Ltd.* 17 Q.B.D. 705, there was a conversion of the plaintiff's property by the defendant. In *Hiort* v. *Bott*, L. R. 9 Ex. 86, the defendant transferred the title to the goods so that they were lost to the real owner. The case of *Wholesale Coal Co.* v. *Price Hill Colliery Co.* 98 W. Va. 438, is also to be distinguished. In that case the defendant assumed control of the plaintiff's property and reconsigned it to another person. There was no conversion in the case at bar. There was no interference with the plaintiff's property. Even if the deposit was his property and the relation between him and the bank was not that of debtor and creditor, the defendant exercised no dominion over the deposit at any time: it merely advised the bank and the bank was free to accept or reject the advice.

> *Orders to strike out, and to sustain the demurrer, affirmed.*