**UNITED STATES of America,**
Appellee,

v.

**UNION LIVESTOCK SALES COMPANY,**
**Inc., a corporation, Appellant.**

No. 8314.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1961.

Decided Jan. 12, 1962.

Howard Caplan, Clarksburg, W. Va. (Stewart McReynolds and McReynolds & Caplan, Clarksburg, W. Va., on brief), for appellant.

Robert E. Maxwell, U. S. Atty., Fairmont, W. Va. (Albert M. Morgan, [former] U. S. Atty., Fairmont, W. Va., on brief), for appellee.

Before SOPER and BELL, Circuit Judges, and MICHIE, District Judge.

SOPER, Circuit Judge.

This case relates to the liability of an auctioneer to the United States for the proceeds of the sale of two cows at Parkersburg, West Virginia, which were covered by a chattel mortgage recorded in Ohio in favor of the Farmers Home Administration. The proceeds of the sale were transmitted to the mortgagor at whose instance the cows were sold. The District Judge held that the auctioneer had constructive notice of the mortgage under the laws of these states and entered judgment for the United States.

Edward L. Miller and his wife, on April 4, 1957, executed a chattel mortgage in favor of the Farmers Home Administration covering eight cows described therein, including the two sold by the auctioneer. The mortgage was recorded pursuant to Sections 1319.01 and 1319.02 of the Revised Code of Ohio, which provides that such a mortgage shall be void as to creditors of the mortgagor, subsequent purchasers and mortgagees in good faith unless deposited with the appropriate county recorder.

The Union Livestock Sales Company, Inc., defendant in the District Court, is a West Virginia corporation which operates a public market for the sale of livestock at auction at Parkersburg, West Virginia. It operates subject to rules and regulations promulgated by the Commissioner of Agriculture of the State pursuant to Chapter 19, Article 2A of the West Virginia Code of 1955. It sold two cows covered by the chattel mortgage at public auction, one on January 25, 1958 and one on February 22, 1958, and remitted the net proceeds to the mortgagor. Information reached the repre-

sentative of the Farmers Home Administration in Ohio that the mortgagor was attempting to sell some of the mortgaged cattle at auction at Athens, Ohio, and an investigation was made and all but two of the cows were recovered, although the mortgagor could not be found. The present suit was then brought and resulted in a judgment for the United States. At the trial the question was raised whether the case was ruled by the state law, as held in United States v. Kramel (8th Cir.), 234 F.2d 577, or by the federal law, since a federal activity is involved, as held in United States v. Matthews, (9th Cir.), 244 F.2d 626. The Judge did not find it necessary to answer this question since he was convinced that under either theory the defendant was liable. He held that the defendant had constructive notice of the mortgage by reason of the provisions of the recording statutes of Ohio, to which reference has been made, and also by reason of the recording statutes of West Virginia, Chapter 40, Article 1, Section 12 of the West Virginia Code of 1955, serial section 3996(12), which gives the mortgagee of chattels brought into the state three months to record the mortgage before his rights are cut off; and he also pointed out that irrespective of the recording statutes the decided weight of authority in this country holds an auctioneer liable to the true owner for property he sells without the owner's authority even if he is innocent of wrongdoing. The Judge, therefore, entered judgment for the United States in the case at bar.

■ The defendant attacks the judgment first on the ground that the evidence was insufficient to support the finding that the cows sold in Parkersburg were two of the animals covered by the mortgage. The record shows, however, that the District Superintendent of the Farmers Home Administration went to Athens when he heard that the mortgagor was attempting to sell some of the cows and also went to the Miller farm and succeeded in recovering six cows, four of which had been wrongfully sold by the mortgagor at Athens. He was unable to locate Miller but he made a search of the farm house and found sales slips for the two cows sold at auction at Parkersburg. We think this evidence was sufficient to justify the finding that these two cows were covered by the mortgage.

■ The principal question to be considered is whether this case is governed by the state or by the federal law; but before discussing this problem we first inquire what relevancy should be accorded the recording statutes of Ohio and West Virginia. It seems to have been assumed that if the state law prevails the Livestock Sales Company acquired constructive knowledge of the mortgage and is, therefore, liable to the United States. We think, however, that this is not true. The recording statute of Ohio gives notice of a mortgage to creditors of the mortgagor, subsequent purchasers and mortgagees in good faith. The Sales Company however, does not fall within any of these categories; and it is well settled that the recording of a legal instrument in accordance with the state statute does not give notice to all the world but only to those enumerated in the law. See City Loan and Savings Co. v. Morrow, 96 Ohio App. 476, 122 N. E.2d 635, 639; Jones Chattel Mortgages and Conditional Sales, 1933 Edition, Section 455, page 221; 14 C.J.S. Chattel Mortgages § 164b, page 771; 10 Am. Jur., Chattel Mortgages, Section 114, page 790, 45 Am.Jur., Records and Recording Laws, Section 86, page 468; accordingly, the auctioneer in this case was not bound by constructive notice of the recorded mortgage.

■ The courts are divided as to whether the state or federal law should be applied to a situation like that before us. Under precisely similar circumstances in the state of Missouri it was held, in United States v. Kramel (8th Cir.), 234 F.2d 577, that the state law controlled; and without reference to the local recording statutes the auctioneer was exonerated under the authority of a decision of the state court in Blackwell v. Laird, 236 Mo.App. 1217, 163 S.W.2d 91, which held that since the Federal

Packers and Stockyards Act required marketing agents subject to its provisions to render services to everyone without discrimination, the agencies without guilty knowledge were not liable for wrongful conversion.

The opposite conclusion was reached in similar circumstances in California in United States v. Matthews (9th Cir.), 244 F.2d 626, on both points, again without reference to the recording statutes. It was held that the general federal law controls, and the court found, as did the District Court in the pending case below, that in the federal and state courts throughout the United States generally the rule is that a factor or commission merchant is liable to the owner of property if he takes part in wrongful conversion even though he has no knowledge that a wrongful conversion has taken place. Obviously, the question as to which law controls is not free from doubt but in our opinion the state law should control in a case like this where transfers of private property are made by the owners in accordance with state law in the course of business transactions. The leading case in the field is Clearfield Trust Company v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. It involved the liability of a bank for the proceeds of a Government check which the bank had cashed upon the forged endorsement of the payee. The court held that the rights and duties of the United States on commercial paper issued by it should not be governed by the local law but by uniform federal law to be ascertained by reference to the federal law merchant developed during the hundred years under the regime of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, and that in the absence of an act of Congress it is the duty of the federal courts to fashion the governing rule according to their own standards. It was pointed out that the issuance of commercial paper by the United States is on a vast scale and that it is desirable to apply a uniform rule throughout the country rather than to follow the vagaries of the divergent laws of the several states. Again in United

States v. Standard Oil Co., 332 U.S. 301, 305, 311, 67 S.Ct. 1604, 91 L.Ed. 2067, where the Government sought recovery of disability payments and medical expenses incurred by it by reason of injuries to a soldier caused by the negligence of the defendant, the court held that the case should be decided by the federal law since it involved the relationship between the Government and persons in its service.

However, it was shown in the Clearfield case, page 367, 63 S.Ct. page 575, that the Supreme Court in its choice of the applicable federal rule has occasionally selected state law, and in the Standard Oil case, pages 308–310, 67 S.Ct. pages 1608–1609, it was again indicated that the federal courts may accept the state law as the appropriate federal rule when, for instance, the Government places "itself in a position where its rights necessarily are determinable by state law, as when it purchases real estate from one whose title is invalid by that law in relation to another's claim", or the state law furnishes "convenient solutions in no way inconsistent with adequate protection of the federal interests." In accordance with these principles the Supreme Court in Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361, applied the law of the state in order to determine the amount of interest recoverable in a suit on a surety bond which was given and to be performed within the state; and in Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93, the state law was held applicable in a suit between private parties for the conversion of Government bonds; and in Board of County Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313, the state rule was held appropriate in denying recovery of interest on state taxes improperly collected from an Indian holding land under a fee simple patent from the United States.

These decisions seem to us to justify the holding that the law of West Virginia should be accepted as the guiding rule.

The loan and mortgage transaction was entered into under the authority of Title II of the Bankhead-Jones Farm Tenant Act, as amended, 7 U.S.C.A. § 1007 et seq., and regulations promulgated thereunder, 6 C.F.R. 341, 342. Section 1007 authorizes the Secretary to make loans to farmers who are citizens of the United States for the purchase of supplies and other farm needs. Section 1018 establishes special limitations on loans and provides in subsection b that the Secretary shall, except as otherwise provided by Congress, make all loans evidenced by notes requiring full liability of the maker and upon such security as the Secretary may prescribe. The procedure adopted by the Government under the authority of the Act calls for the execution of a standard promissory note and a chattel mortgage to be filed or recorded in accordance with the local recording laws. See 6 C.F.R. Sections 342.3, 342.5.

■ These provisions seem to us to carry the unmistakable import that the nature and effect of the Government's security interest under a chattel mortgage is to be subject to the applicable recording laws, and the fair inference is that the Government's rights with respect to third persons are to be determined in accordance with the local law. Whether or not this inference may justifiably be drawn from the statute itself, we think the circumstances justify the court in choosing the state law as the appropriate federal rule to be applied to the loan transaction. We find no need for uniformity in these transactions throughout the United States. On the contrary, it seems to us that the interest of the Government and of the borrower will be properly protected if the local rules governing dealings in the transfer of property, which have been built up by the experience in like transactions and are familiar alike to the courts and the citizens of the several localities, are given application. Moreover, the general purpose of the statute to give aid and assistance to the farming community will be promoted if the loans are made in accordance with local practice.

■ What then is the prevailing rule in West Virginia as to the liability for wrongful conversion by an innocent agent of the wrongdoer? Our attention is called to an early Virginia case which may be accepted as a precedent in West Virginia since it was decided prior to the separation of the states. In Travis v. Claiborne, 19 Va. (5 Munf.) 435 (1817), the owner of a slave conveyed him by recorded deed to a trustee to secure a debt but retained possession of the property. Thereafter an agent of the owner, who had no knowledge of the deed of trust, sold the slave outside the state and paid the proceeds of the sale to the owner. In a suit by the trustee against the agent the agent was exonerated. In the opinion of one of the Judges it was held that the recording of the deed did not give the defendant notice but only creditors and purchasers, and in a second opinion it was held where the conduct of the agent is within the limits of the authority confided to him and is unattended by circumstances sufficient to apprise him that he is acting wrongfully, the principal and not the agent is responsible for the act.

This ruling is clear enough and taken by itself would require the reversal of the judgment for the United States in the pending case. Subsequent decisions, however, weaken its authority. In Newsum v. Newsum, 28 Va. (1 Leigh) 86 (1829), suit was brought against an administrator personally for the conversion of a slave of which his intestate died possessed. The administrator, without notice of any adverse right, sold the slave and applied the proceeds to the satisfaction of the intestate's debts. The intestate, however, had only a life interest under a recorded deed and the true owner of the slave brought suit against the administrator. It was contended that the defendant was not liable in analogy to the case of an agent receiving property and transferring it to his principal, where, if it afterward appeared that the principal had no right, the principal and not the agent was liable. The court, however, held the administrator liable in his

personal capacity saying that he acted at his peril in selling the property and must answer for it however innocent he was of the fact that the estate had no title to the property. This decision was cited with approval in West Virginia in Thompson v. Thompson, 5 W.Va. 190, 193 (1879), in which the court held the administrator liable for the proceeds of the sale of a slave and the distribution of the proceeds to the heirs of the intestate supposing that the slave belonged to the estate, whereas in fact the intestate was only the agent of the owner.

Later cases in West Virginia apply with some strictness the rule that one who has participated in the conversion of another's property is liable to the true owner even if he acts in good faith and without knowledge of the true state of facts. Wholesale Coal Co. v. Price Hill Colliery Co., 98 W.Va. 438, 128 S.E. 313; Pine and Cypress Mfg. Co. v. American Engineering and Const. Co., 97 W.Va. 471, 125 S.E. 375.

In this state of the authorities it seems proper to follow the later rather than the earlier decisions or at least to regard the question as an open one to be decided by the preponderance of the authority in the United States, no certain rule having been laid down by the State of West Virginia. Looking at the matter from this aspect there is no doubt as to the weight of authority. The almost universally accepted rule is that an agent, factor, commission merchant or auctioneer who receives property from his principal and sells it and pays the proceeds of the sale to him is guilty of conversion if the principal has no title to the property, even though the agent acts without knowledge of the defect in the title. See Restatement of Agency, 2nd, Section 349, and Appendix pages 575–6; Restatement of Torts, Section 233; 20 A.L.R. 132–138; 22 Am.Jur., Factors, Section 48; 5 Am.Jur., Auctions, Section 60; 2 Jones, Chattel Mortgages, Section 460. In a few cases the innocent factor or auctioneer engaged in the sale of property subject to a chattel mortgage has been held

free from liability, particularly where the sale occurred out of the jurisdiction where the mortgage was recorded. Hernandez v. Aaron (1895), 73 Miss. 434, 16 So. 910; J. T. Fargason Co. v. Ball (1913), 128 Tenn. 137, 159 S.W. 221, 50 L.R.A.,N.S., 51; Drovers' Cattle Loan and Investment Co. v. Rice, (D.C.Iowa), 10 F.2d 510. On the other hand even in a situation of this kind the general rule imposes liability upon the innocent agent. See United States v. Matthews, 244 F.2d 626; Birmingham v. Rice Bros. (1947), 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108; Walker v. Caviness, (Tex.Civ.App. 1953), 256 S.W.2d 880.

It is contended, however, that no liability should be imposed upon the auctioneer in the pending case because it was operating a public market under the West Virginia statutes which provide generally for the regulation of public markets by the Commissioner of Agriculture of the state and declare public markets "to be affected with a public interest and subject to regulation by the state for the general welfare." See Chapter 19, Article 2A, of the West Virginia Code of 1955. The case is likened to that considered in a few cases arising under the Federal Packers and Stockyards Act, 7 U.S.C.A. § 181 et seq., in which marketing agencies were absolved from liability for the innocent sale of converted property on the ground that the statute makes it the duty of every agency licensed under the act to furnish stockyard services upon reasonable request without discrimination. See Blackwell v. Laird, 236 Mo. App. 1217, 163 S.W.2d 91; Montana Meat Co. v. Missoula Livestock Auction Co., 125 Mont. 66, 230 P.2d 955; United States v. Kramel (8th Cir.), 234 F.2d 577. The majority of the decisions in this field, however, do not follow this line since they find no indication in the statute that it was meant to alter the common law rules of liability, pointing out that the marketing agency is obliged to grant only such requests as are reasonable and not those which relate to goods that the proposed seller has no right to sell. See Annotation, 2 A.L.R.2d 1124.

■ We reach the conclusion that the general rule applied by the great majority of the courts should be followed in the pending case and that the decision of the District Court should therefore be affirmed.

Affirmed.