Tom **BOLACK** and wife, Alice Bolack, Appellants,

v.

Rip C. **UNDERWOOD**, Appellee.

Tom **BOLACK** and wife, Alice Bolack, Appellants,

v.

H. K. **RIDDLE** and Dena Riddle, Appellees.

Nos. 7578, 7612.

United States Court of Appeals Tenth Circuit.

Jan. 18, 1965.

Thomas F. McKenna, of McKenna & Sommer, Santa Fe, N. M., for appellants.

George L. Verity, of Brown, Verity & Brown, Oklahoma City, Okl. (Ray B. Jones, Farmington, N. M., on the brief), for appellee Rip C. Underwood.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

These consolidated appeals follow the entry of judgments in the District Court for the District of New Mexico in actions involving title to a portion of a federal oil and gas lease on lands located in San Juan County, New Mexico. The action was initiated by the appellee Underwood as a suit to quiet title to the lease interest as against appellants who in turn counterclaimed by claim of title in themselves and also filed a third

party claim against the appellees Riddle. The trial court summarily entered judgment quieting title to the disputed interests in favor of appellee Underwood and against appellants, and, after trial, entered a money judgment upon the cross-complaint in favor of appellants and against the Riddles. The appeal from the latter judgment, No. 7612, is taken as a protective procedural measure only and appellees Riddle do not appear in this court.[1] Our primary concern is therefore directed to a consideration of appellants' claim that the trial court erred in No. 7578, its judgment quieting title to the subject lease interests in Underwood.

On July 8, 1948, the Riddles, then the undisputed owners of the subject lease, assigned their interests therein to the Bolacks by an instrument containing the language "subject to the approval of the Director of the Bureau of Land Management." The Bolacks filed the assignment with the Bureau for approval on October 28, 1948, subsequent to the ninety-day period allowed for filing. Thereafter, on April 30, 1952, the Bureau notified the Bolacks that the assignment could not be approved because they had not submitted a consent of the surety under the Riddles' bond to the transfer, and the Bolacks were given thirty days to supply this deficiency or ninety days to appeal from this decision by the Bureau. The Bolacks, however, did nothing: they paid no bond premiums on the lease, paid no delay rentals, and in no way asserted ownership over the disputed leasehold until the complaint in the instant action was filed on March 11, 1961.[2] During this period of nearly nine years Riddle continued to furnish and post all bonds required by the Bureau in connection with the lease.

On July 28, 1960, the Riddles assigned the entire lease to one E. R. Richardson, a broker, so that Richardson could sell the lease for them, which Richardson failed to do. Mr. Riddle, desperately in need of money, then called upon plaintiff Underwood, whom he had known for years, and asked him to buy the lease for $4,000. Since title to the lease was still in Richardson, Underwood and Riddle went to his office where Underwood gave Richardson a check for $4,000, which Richardson immediately endorsed to Riddle, in return for Richardson's assigning the lease to Underwood. The affidavits and depositions relied upon by the trial court are uncontradicted to the effect that Underwood knew nothing of the prior assignment to the Bolacks. Underwood could have learned of the assignment had he examined the records of the Federal Land Office, which he admittedly did not do, but there was no recording in the state office provided for by New Mexico law.

On the basis of the above undisputed facts the trial court granted Underwood's motion for summary judgment, finding that the New Mexico recording acts governed and had not been complied with and that Underwood had knowledge neither of the Bolack assignment nor of circumstances that would lead an ordinarily prudent man to the facts. The trial court thereupon concluded that the records of the office of the Bureau of Land Management did not constitute constructive notice to Underwood and that Underwood therefore was an innocent purchaser for value.

As we have earlier indicated, after the entry of the summary judgment against the Bolacks, they proceeded to judgment upon their cross-complaint against the Riddles, and this pro-

---

1. The money judgment against the Riddles is based upon a tortious divesting of title and is dependent upon the correctness of the court's finding that appellants have no present interest in the leasehold. If, as appellants contend, such finding is incorrect the basis of the money judgment must fail; otherwise, there is no claim of error regarding No. 7612.

2. On May 10, 1961, Mr. Bolack filed a protest with the land office against the approval of the assignments by the Riddles and Richardson. The land office dismissed the protest, stating that it would recognize the judicial decision in the instant case as correctly determining the rights of the parties.

cedure premises a preliminary contention by Underwood that this appeal should be dismissed. The basis of the motion is that the Bolacks, by obtaining judgment on their third party complaint against the Riddles, have waived their right to appeal and that that judgment constitutes an acceptance by the Bolacks of the summary judgment in favor of Underwood. While the general rule is that the right to appeal may be waived by an inconsistent act by the losing party, e. g., Hinton v. Hotchkiss, 65 Ariz. 110, 174 P.2d 749, that situation is not here presented, as the Bolacks did not attempt to execute their judgment and were merely protecting themselves in the event the adverse judgment was allowed to stand. To dismiss would detract from the benefits of third party practice and would be inconsistent with the inherent policy of Rule 14(a), Fed.R. Civ.P. See, e. g., Luther v. United States, 10 Cir., 225 F.2d 495; Moss v. Smith, Ky., 361 S.W.2d 511; Aetna Cas. & Sur. Co. v. Smith, 127 A.2d 556 (D.C. Mun.App.); cf. Flag Oil Corp. of Delaware v. Triplett, 180 Okl. 154, 68 P.2d 108. The motion to dismiss the appeal is accordingly denied.

 The Bolacks contend that the trial court erred in granting Underwood's motion of summary judgment for the reason that there remained material facts in dispute. Although summary judgment is appropriate only where the case is so free of doubt as to render a formal trial useless, Singer v. Rehm, 10 Cir., 334 F.2d 240, and all inferences must be viewed in the light most favorable to the party opposing the motion, United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176, the motion should be granted in situations where the factual issues are all either irrelevant or spurious; such is the import of the language of Rule 56(c), Fed.R.Civ.

P., "no genuine issue as to any material fact." The trial court may not make a factual finding by reference to deposition or affidavit wherein the disputed issue of fact appears but may explore whether or not such disputed issue does exist by reference to deposition and affidavit. Here, testimony by deposition unequivocally shows that Underwood had no knowledge of the assignment to Bolack and nothing was offered by appellants in opposition to the motion for summary judgment to indicate their intention or ability to prove otherwise. In such case, the trial court may accept the deposition as negativing the existence of a disputed fact and accept the record as showing no issue regarding a "material fact 'dispositive of right or duty remain[ing] in the case'." In this situation summary judgment is proper. Bushman Construction Co. v. Air Force Academy Housing, Inc., 10 Cir., 327 F.2d 481.

Two principal issues remain to be decided; first, whether the 1948 assignment was effective to pass title to the Bolacks in view of the lack of Bureau of Land Management approval of the assignment, and second, whether, assuming title did pass, Underwood was an innocent purchaser for value with rights superior to those of the Bolacks. In view of our disposition of the second issue we need not here consider whether the 1948 assignment passed title to the Bolacks.

 The answer to the question of whether Underwood may be considered an innocent purchaser for value is dependent upon whether the records at the Federal Land Office constitute constructive notice to a purchaser of a federal lease. New Mexico law is to the effect that the federal land office records do not constitute such notice, as sections 65–2–1 et seq.,[3] N.M.S.A., require that assign-

3. "65–2–1. Production of oil, gas or other minerals—Assignments of royalties to be recorded.—All assignments and other instruments of transfer of royalties in the production of oil, gas or other minerals on any lands in this state, including lands

operated under lease or contract from the United States and from the state of New Mexico, shall be recorded in the office of the county clerk of the county where the lands are situated."

ments of interests and royalties in federal oil and gas leases be recorded in the appropriate county clerk's office, and sections 71–2–1 et seq.[4] provide that an instrument that is not recorded cannot affect the title or right to real estate of any purchaser in good faith. New Mexico law also provides that an interest in an oil and gas lease constitutes an interest in real property, e. g., Rock Island Oil & Refining Co. v. Simmons, 73 N.M. 142, 386 P.2d 239. There is no federal statute governing disputes between private individuals regarding rights to federal oil and gas leases, and in such instance, where no right of the federal government is involved, state law governs. See Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93; United States v. Union Livestock Sales Co., 4 Cir., 298 F.2d 755, 96 A.L.R.2d 199.

 Viewed in this posture, the problem at hand is reduced to the simple issue of whether under New Mexico law Underwood is chargeable with notice of the prior assignment to the Bolacks. And section 71–2–3, N.M.S.A., clearly states that absent recording in the office of the county clerk the prior assignment will not affect the title of a subsequent purchaser, in this case Underwood. Since it is undisputed that Underwood did not have notice of the prior assignment and that it was not recorded in the county clerk's office, the judgment for Underwood was correct. The Bolacks' other two contentions, that the trial

court erred in refusing to rule upon whether they were entitled to inspect a letter written by Underwood's counsel, and that Underwood was not entitled to relief in equity, are without merit. The judgment in number 7578 is affirmed. It follows that the judgment in number 7612 is also affirmed.

"65–2–2. Effect of recording or failure to record.—Such records shall be notice to all persons of the existence and contents of such assignments and other instruments so recorded from the time of filing the same for record, and no assignment or other instrument of transfer affecting the title to such royalties not recorded as herein provided shall affect the title or right to such royalties of any purchaser or transferee in good faith, without knowledge of the existence of such unrecorded instrument."

4. "71–2–1. Recording deeds, mortgages and patents.—All deeds, mortgages, United States patents and other writings affecting the title to real estate, shall be

recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated."

"71–2–2. Constructive notice of contents.—Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."

"71–2–3. Unrecorded instruments—Effect.—No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 [71–2–1], shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments."