Leo W. **FEASTER**, Individually, and also as Executrix of the Will of F. L. Feaster, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. W–3756.

United States District Court, D. Kansas.

Aug. 1, 1969.

Mills & Mills, McPherson, Kan., for plaintiff.

Newell A. George, former U. S. Atty., District of Kansas, Bernard V. Borst, former Asst. U. S. Atty., Wichita, Kan., and Darrell Hallett, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WESLEY E. BROWN, District Judge.

This is a suit for refund of income taxes, penalty and interest paid by F. L. Feaster, now deceased, and his wife, Leo W. Feaster, plaintiff here, for the years 1962 and 1963, in the aggregate amount of $24,584.00, plus statutory interest.

Defendant United States has moved for summary judgment under the provisions of Rule 56 Federal Rules Civ. Proc. upon the ground that the pleadings, depositions, answers to interrogatories, affidavits, and admissions now on file show that there is no genuine issue as to any material fact, and that it is entitled to a judgment in its favor as a matter of law. Under Rule 56, the burden is on the moving party to show that there is no genuine issue of a material fact. In making its determination, the Court will not consider factual issues which are irrelevant as matters of law. While the trial court may not make a factual finding from depositions or affidavits, it may refer to such material for the purpose of ascertaining that they negate the existence of some fact material to proper disposition of the controversy between the parties. Bolack v. Underwood (10th Cir. 1965) 340 F.2d 816, 819.

The question in this case involves the proper tax treatment of $71,000.00 received by F. L. Feaster in connection

with the sale of certain assets of a corporation in which he was a majority stockholder. Plaintiff asserts that this sum is attributable to sale of good will in a going business and is therefore entitled to treatment as a capital asset. Defendant asserts that the sum was paid in consideration for an agreement not to compete, and as such, represented ordinary income, to be taxed as such.

After review of the pleadings, depositions, exhibits and other material submitted in connection with the Motion for Summary Judgment, the Court finds that the following undisputed facts are established.

F. L. Feaster, hereafter referred to as "Feaster", and Leo W. Feaster, hereafter referred to as "Plaintiff", as husband and wife filed joint income tax returns for the years 1962 and 1963. Feaster died on May 18, 1966, and his wife was appointed executrix of his estate. She brings this action individually, and as Executrix of her husband's estate.

From 1938 to 1957, Feaster was engaged in the trucking business, apparently as sole proprietor, until 1957, when the business was incorporated under the name of Feaster Trucking Service, Inc. Feaster was president and majority stockholder, and remaining stock was held by his wife, a son, J. R. Feaster, and two daughters. Two of his sons-in-law, Walter Hobbs and Clifford Litzenberger, were employed by the corporation and took an active part in the business. The Feaster corporation was engaged in hauling various commodities, and had permits to truck gasoline, crude oil, bricks, and cattle.

Rock Island Oil & Refining Company, Inc., a Kansas corporation, had been a customer of Feaster in years past, and it had been interested in acquiring the crude oil trucking portion of Feaster's company for several years. Feaster, in turn, had suggested that he buy out Rock Island's crude oil trucking facilities (Varner Depo. 7–8, 11, 20–21). In late summer of 1962 these counter-offers came to serious negotiations, and on November 7, 1962, a written offer was made by Rock Island to the Feaster corporation and certain of its officers:

"Confirming our various converations, we propose to offer you $186,500.00 for your crude oil transportation facilities, including all of your mobile equipment * * * together with all operating equipment used in conjunction with this operation, whether listed or not listed, less certain items deleted from the Pratt Shop (list attached).

We propose to offer $115,000.00 to be paid to you and other individual officers of the Feaster Trucking Service, Inc., for a No-Compete Agreement between the Feaster Trucking Service, Inc. and Messrs. F. L. Feaster, J. T. Feaster, (the son), Walter Hobbs, and Clifford Litzenberger (the sons-in-law)."

This proposal was made contingent upon transfer of a Kansas Corporation Commission common carrier permit. [Hansen Affidavit, Ex. 1].

The proposal was worked over by counsel for the parties, and on November 16, 1962, a final agreement and contract was signed by the Feaster corporation and Rock Island. [Ex. 5, Hansen Affidavit]. It provided that Feaster would sell its common carrier permit, and certain itemized equipment and real estate for a price of $196,500.00, with $10,000 of this sum allocated to purchase of the transportation permit.[1] The agreement was made contingent upon a) approval of transfer of the permit by the Kansas Corporation Commission; b) the successful negotiation of terms and conditions of "no-compete" agreements with F. L. Feaster,

---

1. In addition to the permit, the property conveyed included 17 trucks and tractors, 19 trailers, parts and gauging equipment, storage tanks, radio tower and accessories, and real estate of the value of $1,500.00. [Ex. 5, Hansen Aff.] On December 28, 1962, pursuant to agreement, the Feaster Corporation also assigned to Rock Island accounts receivable for a one-week period, amounting to $6,650.29. [Depo. Ex. 16, witness Carey].

J. R. Feaster, Walt Hobbs, Clifford Litzenberger, and the Feaster Corporation; and c) the furnishing of certified copies of minutes of shareholders meetings of Feaster corporation authorizing the sale and covenants not to compete.

Further negotiations were had with reference to the agreements not to compete, and on November 26, 27, and 28, separate covenants were executed by F. L. Feaster, the Feaster Corporation, J. R. Feaster, and Hobbs and Litzenberger. As consideration for the covenants, the corporation received $5,000, F. L. Feaster, $71,000, and J. R. Feaster, Hobbs and Litzenberger, $13,000 each. [Hansen Affidavit, Exs. 9, 10, 11, 12, 13].

The covenant not to compete entered into by Feaster [Hansen Affidavit, Ex. 9] provided in pertinent part:

THIS AGREEMENT, made this 26th day of November, 1962, by and between F. L. Feaster, hereinafter referred to as Feaster, and Rock Island Oil & Refining Co., Inc., hereinafter referred to as Rock Island, is as follows:

1. Feaster will not engage, either on his own behalf, as an employee, or as a stockholder in a corporation whose stock is not available to the general public, in the business of transporting by motor vehicle as a private or common carrier, or buying or selling, crude oil or any petroleum products that are not refined for a term of five (5) years from the date hereof within the States of Kansas, Nebraska, Oklahoma and that portion of the State of Colorado being Sedgwick, Phillips, Yuma, Carson, Kiowa, Prowers and Baca Counties, subject to the terms and conditions which follow.

\* \* \* \* \* \*

Payment of the $71,000.00 was made in two parts, $20,000 being paid in 1962, and the balance being paid in 1963. [Compl. par. 6; Ans. par. 6].

In reporting the $71,000.00 in federal income taxes returns for 1962 and 1963, the Feasters claimed the same to be income from good will, entitled to capital gains treatment. The District Director determined that the income was attributable to the covenant not to compete, and taxable as ordinary income. Deficiencies were assessed and paid, claim for refund filed, with notice of disallowance of the claim being waived by plaintiff. This action was instituted on November 22, 1966.

The foregoing facts are without dispute. While Feaster may have objected to the covenant, plaintiff concedes that he signed the agreement not to compete and that he "consented to the drafting of the agreements in the form demanded by Rock Island Oil & Refining Company, Inc." [¶4, Amended Complaint, R. 22].

In support of its Motion for Summary Judgment, the government contends that the amount in controversy constitutes consideration for a covenant not to compete, as a matter of law, because the covenant is separately stated in a written, bargained for contract, with separately stated consideration for the covenant. Basically, plaintiff contends that in 1962 F. L. Feaster was in failing health and was forced to quit business because of his physical condition; that the payment made for his covenant not to compete was a sham and without basis in "economic reality", inasmuch as Feaster was in no condition to compete, and that the $71,000.00 actually represented a part of the purchase price for his business, in particular, a non-separable payment for good will built up over years in his operation of the trucking business.

The rules governing tax treatment of payments made under agreements not to compete have been set out by the Tenth Circuit Court of Appeals in Hamlin's Trust v. Commissioner of Internal Revenue (10th Cir. 1954) 209 F.2d 761, 765:

"Where a covenant not to compete constitutes a nonseverable element of a transaction in which the owner of a going concern sells the property and transfers the good will of the business, the covenant is to be treated as a contributing element of the assets transferred and the entire revenue received

is subject to tax on the basis of a capital gain. * * * But if a covenant not to compete can be segregated in order to be assured that a separate item has actually been dealt with, then so much as is received for the covenant is ordinary income rather than income from the sale of a capital asset."

In *Hamlin's Trust*, the taxpayers were stockholders in a Colorado newspaper. They sold all of their stock, together with an agreement not to compete. When the parties met to sign the final contract, the buyer proposed that the stock be evaluated at $150 per share, with $50 per share allocated to the non-competition provisions of the contract. It was mentioned that this would help the Buyer, tax-wise. "With very little discussion, the stockholders present agreed to the suggested provision because they thought it would make no difference to them." On appeal from the Tax Court decision finding that $50 per share was taxable as ordinary income, the taxpayers urged that in reality the entire sum was paid for purchase of a capital item, i. e., the stock. In ruling that the $50 per share was subject to tax as ordinary income, the Court of Appeals noted that the parties assented and agreed to the allocation; that provision for payment for the non-competition proviso was free from doubt and ambiguity, and although there was little discussion, the sellers understood the contract and knowingly signed it. In connection with the fact that the sellers failed to give consideration to the tax consequences of the provision, the Court stated, at p. 765, 209 F.2d:

" * * * where parties entered into an agreement with a clear understanding of its substance and content, they cannot be heard to say later that they overlooked possible tax consequences. While acting at arm's length and understandingly, the taxpayers agreed without condition or qualification that the money received should be on the basis of $150 per share for the stock and $50 per share for the agreement not to compete. Having thus agreed, the taxpayers are not at liberty to say that such was not the substance and reality of the transaction." [2]

Other courts have followed the *Hamlin* rule in finding that allocations for non-competitive covenants were taxable as ordinary income. In Rogers v. United States (9th Cir. 1961), 290 F.2d 501, the court ruled that even though the seller had been "maneuvered" by the purchaser into a big tax disadvantage, the trial court could refuse to go behind the agreement between the parties, when there was no equivocation or confusion as to what was done, and the agreement had been reached, after good faith negotiation between the parties. In C. I. R. v. Danielson (3d Cir. 1967) 378 F.2d 771 (en banc), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123, the written agreement between the parties for sale of stock allocated a portion per share to a covenant not to compete. Although the shareholders inquired about tax consequences, they were not advised that the payment would be treated as ordinary income. All shareholders signed the agreement, upon advice of counsel. On appeal, the taxpayers urged that the amount allocated for the covenant had no basis in "business reality", but the court ruled that there was no showing that the sellers lacked understanding of the terms of their agreement or that there was fraud, undue influence or duress, and that their arrangement was binding upon them as a "conscious agreement," even though there was no independent basis in fact to establish the realities of possible competition. In so holding the Court established the following rule:

" * * * a party can challenge the tax consequences of his agreement as construed by the Commission only by adducing proof which in an action between the parties to the agreement

2. In the companion case, involving the Buyer's right to deduct payments made for non-competition proviso, the circuit court found payments were entitled to be deducted pro rata during life of covenant. Commissioner of Internal Revenue v. Gazette Tel. Co. (10th Cir. 1954) 209 F.2d 926.

would be admissible to alter that construction or to show its unenforceability because the mistake, undue influence, fraud, duress, etc." [378 F.2d at 775]

The Court noted that the *Hamlin's Trust* case reflected in substance the rule adopted by the Third Circuit. In Federal Oil Company v. C. I. R. (3d Cir. 1967) 385 F.2d 127, cert. denied, 390 U.S. 954, 88 S.Ct. 1047, 19 L.Ed.2d 1147, the Court applied the *Danielson* rule, *supra*, to the sale of a wholesale fuel oil distributing business where a substantial portion of the purchase price was allocated to a 5-year covenant not to compete. Although the taxpayer there urged that the allocation did not "accord with the economic reality of the transaction," the court found there was no proof which would justify an alteration in the terms of the written agreement by reason of mistake, undue influence, fraud or duress.

■ In applying the law, as interpreted in this Circuit in *Hamlin's Trust*, to the undisputed facts in this case, the court concludes that the government's Motion for Summary Judgment must be sustained. The evidence establishes that the Feaster sale was negotiated over a long period of time, that the agreement not to compete, an express condition of the sale, was negotiated separately and apart from the sale itself; that Feaster was at all times represented by counsel, and that he knowingly assented to the agreement. In view of these facts, and the *Hamlin* rule, the Court will not go behind the agreement of the parties. Evidence pertaining to the state of Feaster's health, or his reasons for agreeing to the covenant are immaterial to the issue now before the Court. There is no evidence, and indeed plaintiff does not contend, that the physical condition of Feaster was such as would support an action by him against Rock Island to rescind the agreement because of fraud, duress, or other unconscionable conduct. The evidence before the Court establishes

as a matter of law that there was a conscious agreement between the parties with reference to the covenant not to compete, reached after arms length negotiations, and plaintiff may not now seek to alter the terms of that agreement for the purpose of favorable tax treatment.

· The Court has considered decisions relied upon by plaintiff in Grace Bros. v. Commissioner of Internal Revenue (9th Cir. 1949) 173 F.2d 170; Barran v. Commissioner of Internal Revenue (5th Cir. 1964), 334 F.2d 58; Masquelette's Estate v. Commissioner of Internal Revenue (5th Cir. 1956) 239 F.2d 322; Balthrope v. Commissioner of Internal Revenue (5th Cir. 1966) 356 F.2d 28; and Schulz v. Commissioner of Internal Revenue (9th Cir. 1961) 294 F.2d 52. Apart from the fact that the Court determines that *Hamlin's Trust* is controlling in this case,[3] these decisions are distinguishable insofar as the Feaster situation is concerned. In *Schulz*, the *buyer* claimed deductions for payments made under a non-competition agreement. The Court found that agreement to be a sham due to over-reaching of the seller and the character of the competitive restraint—i. e., one year, and one mile. The Court recognized that ordinarily "countervailing tax considerations" as between buyer and seller will tend to limit tax avoidance schemes, but that there, the seller was at considerable disadvantage due to ignorance. In connection with its ruling, the Court distinguished the *Hamlin* and *Rogers* cases upon the ground that the parties there sought to vary their own agreement, while in *Schulz*, the Commissioner had a valid right to interpret the agreement according to the true intentions of the parties.

In *Grace Bros.*, where only physical assets were sold, and there was no conveyance of the "business" as such, there was no evidence of an agreement not to compete; in *Masquelette's Estate*, where court found the non-competition agreement non-severable from the sale of an

---

3. For discussion of "economic reality test" as opposed to the "severability test", see General Insurance Agency, Inc. v. C.I.R. (4th Cir. 1968) 401 F.2d 324, 330.

accounting business, there was no allocation of payment between good-will and the covenant; in Barran v. C. I. R., the Court found that the taxpayer had failed to sustain the burden of establishing "strong proof" that the non-competition agreement did not declare the true intention of the parties. In that case, although "good will" was not expressly conveyed, all assets of a milk plant were sold. Assets of a partnership were conveyed except an adjoining lot and two automobiles. After the sale, business was carried on as usual, the buyer continuing to use the same routemen. In finding that payments received under an agreement not to compete constituted ordinary income, the Court found that the taxpayers had failed to carry the burden of "strong proof" necessary to overcome their written agreement. The Court noted the Hamlin's Trust case, remarking that while shareholders do not own good-will in their company, this factor would be an element in considering whether the covenant had business reality and severability.

In Balthrope v. C. I. R. the taxpayer became ill and decided to sell his radio station, which was incorporated. At a preliminary conference, the buyer proposed to pay $400,000 for the business, allocating $150,000 to a covenant not to compete. The taxpayer agreed, stating: "I am sick. I am not going back in the radio business in San Antonio". Discussion was had for five minutes, and no mention was made of tax consequences. The sale was finally closed by two separate contracts—one for sale of all stock in the corporation for $250,000, the other, a separate agreement with taxpayer and wife for 10 years' consulting and managerial services, plus their agreement not to compete for a price of $150,-000. The Court in reaching its decision determined that the "severability test"

was improper, and it looked to the "business realities" of the situation. In finding that the agreement had "economic reality", the Court noted that the seller did not own the "good will" of the corporation, that sold only his stock—this being evidence that the covenant was independent of the sale; that although taxpayer stated he was ill and would not compete, he did in fact continue some activities; that his ill health did not affect taxpayer to the extent that he did not understand his agreement; and that although he may not have been aware of full tax consequences, he was not naive and did have the advice of an accountant, who suggested certain modifications in the agreement for other tax purposes.

Because the issue has been presented by Motion for Summary Judgment, this Court has made no comment concerning the necessity of "strong proof" to overcome the written agreement of the parties, and has not emphasized the fact that Feaster, in his individual capacity, did not own the good will of the Feaster corporation, if any in fact existed, for the purposes of "selling" the same through his agreement not to compete. The Court would point out, however, that insofar as his status to sell good will is concerned, he is comparable to the shareholders in Hamlin. Such factor is further proof, if any be needed, of the severability and independence of the covenant which he negotiated with Rock Island.

We hold that the payments received by Feaster, pursuant to his written agreement and covenant not to compete of November 26, 1962, constituted ordinary income received during the taxable years 1962, 1963.

The Clerk of this Court will enter judgment in favor of the United States, taxing the costs of this action to the plaintiff.