**Jack ANDO, Plaintiff-Appellant,**

v.

**The GREAT WESTERN SUGAR COMPANY, Defendant-Appellee.**

**No. 72-1224.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 21, 1972.

Decided March 20, 1973.

532

J. D. Fitzstephens, Cody, Wyo., for plaintiff-appellant.

Jay H. Topkis, New York City (Paul B. Godfrey, Cheyenne, Wyo., Paul, Weiss, Rifkind, Wharton & Garrison, Baer & McGoldrick, Max Gitter and

Thomas Baer, New York City, of counsel, on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and JONES * and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Jack Ando, a citizen of the State of Wyoming, brought an action in the United States District Court for the District of Wyoming against the Great Western Sugar Company, a Delaware corporation with its principal place of business in the State of Colorado. The complaint presented three separate claims for relief. The first two were based on diversity jurisdiction and alleged libel and slander, and the third claim was for an alleged violation of federal antitrust laws.

Both parties to the controversy engaged in extensive pre-trial discovery. Based, then, on various answers to interrogatories, admissions and depositional proof, including the depositions of Jack Ando himself, Great Western moved for summary judgment under Fed.R.Civ.P. 56. After extended argument and briefing of the matter, the trial court granted the motion and entered judgment for Great Western. Ando now appeals.

We affirm on the ground that based on the record before it, the trial court was justified in concluding that there was no genuine issue of a material fact and that summary judgment was proper. Background information which is not really in dispute must be fully developed in order to demonstrate the propriety of the trial court's action.

Ando is a grower of sugar beets and in the past, at least, has sold his beets, under contract, to Great Western, the latter being a processor of sugar beets and in connection therewith maintaining several processing plants in the Rocky Mountain West. In 1968, Ando, in addition to his farming activities, entered into a contract with Zwaanesse Ltd., a Dutch concern, to become its franchised dealer to sell in the western part of the United States its sugar beet seed, known as "Zwaanpoly."

Ando had earlier contacted Great Western and inquired as to whether Great Western would be interested in assisting him in marketing the Zwaanpoly beet seed. Great Western declined, but informed Ando that he was free to attempt to sell the Dutch seed to growers under contract to Great Western. In this regard it should be mentioned that Great Western had its own sugar beet seed which it sold to its growers, and others, but it nonetheless gave permission to Ando to sell his Dutch seed to Great Western growers. And this Ando did during the 1968 season.

During the latter part of 1968 a dispute, or at least a difference of opinion, arose between Ando and Great Western, and others, concerning the general adaptability of Zwaanpoly seed to the Rocky Mountain West, the discussion centering on the disease resistance qualities of Zwaanpoly, as well as its relative sugar content and processed juice purity as opposed to beets grown from other seeds, including Great Western's own commercial beet seed strains.

After considerable discussion, it was agreed that for the 1969 season, at least, Great Western would continue to buy beets grown from Zwaanpoly seed, and that for that year, at least, Ando could continue to sell his seeds to Great Western growers who chose to buy it. The question as to whether Zwaanpoly would be used in 1970, and thereafter, was thereupon referred to a so-called "Joint Research Committee," which was charged with the responsibility of conducting tests of Zwaanpoly seed, as compared with other beet seed, for disease resistance, sugar content, purity, and other significant characteristics. The Joint Research Committee was composed of thirteen elected representatives of the growers and three representatives of Great Western.

* Of the Fifth Circuit, sitting by designation.

Beginning in the spring of 1969, the Joint Research Committee, hereinafter referred to as JRC, caused to be conducted extensive testing of the Zwaanpoly seed, as well as other sugar beet seeds, such tests being conducted at different locations by various branches of the United States Department of Agriculture, by a number of universities, as well as through the facilities of Great Western. Additionally, Ando made available to JRC his views on the matter, both orally and in writing, as did Dr. Zwaan himself, Dr. Zwaan being the developer of the Dutch seed, who visited the United States in the fall of 1969. Similarly, Great Western, mainly through one of its employees, a Dr. Oldemeyer, who was himself a member of the JRC, made its views and test results available to JRC.

On December 17, 1969, the JRC met to analyze the results of the various tests and after deliberation voted unanimously that Zwaanpoly seed would not be used in the 1970 season by any grower under contract to Great Western and that in 1970 and all succeeding years no grower would use any seed except seed approved by it.

About a week after this action by JRC, Great Western and the elected officials of the beet growers association caused several press releases to be issued, setting forth the action taken by JRC, and it is these press releases which form the basis for Ando's libel claim against Great Western. Specifically, Ando complains about the press releases which, in addition to announcing the action taken by JRC, contained the following statements: (1) Beets grown from Zwaanpoly seed are consistently lower in sugar content and purity than beets grown from Great Western's seed; (2) Zwaanpoly beets are especially susceptible to the diseases of leaf spot, curly top, nematodes and Rhizoctonia; (3) Zwaanpoly beets are more susceptible to freezing; and (4) that "extensive scientific investigations proved conclusively" that the "best interests" of a vast majority of beet growers in Great Western districts would be served by not using Zwaanpoly seed.

As indicated, the press releases form the basis for Ando's first claim. Ando's second claim is grounded on the statements made by Dr. Oldemeyer to the JRC, said statements being along the same general lines as the various written statements appearing in the subsequent press releases.

The third claim was an alleged antitrust violation grounded on what was said to be Great Western's efforts to create a monopoly in the sale of its sugar beet seed in this geographical area. The propriety of the trial court's action in entering summary judgment on the third claim is not challenged in this court. Rather, counsel confines his argument here to the propriety of the trial court's action in entering summary judgment on the libel and slander claims. We will accordingly confine our comment to the libel and slander aspects of the case, which is the heart of the controversy.

▰ Initially we note that it is agreed that it is the substantive law of Wyoming which must be applied with respect to the merits of the libel and slander claims presented here in this diversity action.[1] It is further agreed, however, that it is not Wyoming law which controls the handling of the motion for summary judgment,[2] such being a matter of federal procedural law.[3] In this context, then, the trial court granted Great Western's motion for summary judgment and in so doing determined that on the basis of the record then be-

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

2. See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

3. Byrd v. Blue Ridge Rural Electrical Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

fore it the allegedly defamatory statements made by Great Western, both written and oral, were in fact true statements and that accordingly there remained no genuine issue as to any material fact. The trial court proceeded on the premise that the truth of a defamatory statement is a "complete" defense to an action for libel, citing in support of this proposition Article I, § 20 of the Wyoming Constitution, about which more will be said, and the Restatement of Torts, § 582 (1938).

■ Fed.R.Civ.P. 56(c) provides in pertinent part that a motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this rule, it has been declared that a trial court is under a duty to grant a motion for summary judgment in an appropriate case, bearing in mind that the relief contemplated is drastic and the rule should be applied with caution to the end that litigants will have a trial on bona fide disputes.[4] Under the rule no margin exists for the disposition of material factual issues,[5] and the rule neither serves as a substitute for trial of the case nor requires the parties to dispose of litigation by use of affidavits.[6] The pleadings are to be construed liberally in favor of the party against whom the motion is made,[7] but the trial court may pierce the pleadings by determining from the depositional proof, admissions and affidavits in the record whether any material issues of fact exist.[8] If, after such scrutiny, any issue as to a material fact dispositive of right or duty re-

mains, the case is not ripe for disposition by summary judgment, and the parties are entitled to a trial.[9] However, if no such fact issue remains, a motion for summary judgment should be granted.[10]

In his resolution of the matter, the trial judge relied to a considerable extent upon Article I, § 20 of the Wyoming Constitution. That section provides as follows:

"*Freedom of speech and press; libel; truth a defense.*—Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with a good intent and [for] justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under direction of the court."

■ Under the aforesaid provisions of the Wyoming Constitution, then, the truth, under certain conditions which will be discussed later, is a "sufficient defense" to a libel action. On the record before it, we conclude that the trial court was justified in holding that the statements complained about were in fact true, leaving no genuine issue of material fact remaining.

In reaching its determination that the statements relied on by Ando were true statements, the trial court took into consideration the results of the various tests conducted on behalf of the JRC. Additionally, the trial court also took into consideration, as evidence that the statements complained about were true, the various admissions made by Ando in his depositions, along with the declarations against interest made by Dr.

4. Frey v. Frankel, 361 F.2d 437 (10th Cir. 1966).

5. Nafco Oil & Gas Inc. v. Appleman, 380 F.2d 323 (10th Cir. 1967).

6. Hanley v. Chrysler Motors Corporation, 433 F.2d 708 (10th Cir. 1970).

7. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

8. Smoot v. Chicago, Rock Island & Pacific R. R. Co., 378 F.2d 879 (10th Cir. 1967).

9. Fischer Construction Company v. Fireman's Fund Insurance Company, 420 F. 2d 271 (10th Cir. 1969).

10. Alt v. American Income Life Insurance Co., 337 F.2d 472 (10th Cir. 1964).

Zwaan in his several writings which were before the JRC. In this regard Dr. Zwaan, who was, as above indicated, the head of the Dutch firm which granted Ando a franchise to market its seed, expressed "surprise" that tests were being conducted on "Zwaanpoly's resistance to cercospora [leaf spot], curly top and nematodes" and in connection therewith wrote to Great Western as follows:

"As all other principal varieties on the western European continent . . . Zwaanpoly has no resistance to these diseases. We have never claimed resistance to these diseases and have recommended to our distributor that our seed be distributed in areas where there is no curly top and to stay away from areas where leaf spot is a problem."

Concerning the proposed testing of Zwaanpoly seed for sugar content and purity, Dr. Zwaan wrote Ando as follows:

"All this testing by Great Western on yield and juice purity . . . will in our opinion only confirm what we already know. The tests may reveal how great the differences are. . . ."

Prior to the publication of the statements here complained about, Ando himself wrote Great Western and conceded that "in most cases" the sugar content and purity of Zwaanpoly seed was lower than Great Western's beet seed. And in his deposition Ando gave answers to the same general effect.

After the JRC had announced its decision, Ando wrote the Zwaanesse firm as follows:

". . . When Great Western personnel read the letter you wrote to the Editor of Thru the Leaves stating that Zwaanpoly didn't have any resistance to Leaf Spot, Curly Top and Nematodes to the growers research committee that finished it as far as Zwaanpoly seed is concerned."

As indicated, the trial court concluded that there was no genuine issue of material fact since the record showed the truth of the statements complained about by Ando. This the trial court determined was the situation, not only as to statements made by Great Western concerning sugar content, purity, and the disease resistant qualities (or lack of them) of Zwaanpoly, but also as to the statements of Great Western to the effect that Zwaanpoly beets were more susceptible to freezing than other beets. In this regard, Ando in his deposition conceded that Zwaanpoly beets grew "out of ground" more than other beets, and therefor were necessarily more exposed to cold weather. The trial court held that the last matter complained about by Ando, i. e., Great Western's statement that the "best interests" of beet growers were not served by using Zwaanpoly, was an honest expression of opinion based on Great Western's other statements which the trial court concluded were in fact the truth.

Counsel for Ando, in his brief, attempts to create what he deems to be disputed issues of fact, pointing out, for example, that Great Western in its testing compared its experimental seed with Zwaanpoly commercial seed. Such, argues counsel, is like comparing a new Volkswagen to a used Chrysler, or oranges to apples. This is not the complete picture. The fact is that Great Western's testing included various kinds of seed, including its commercial seed, as well as certain experimental seed, along with the beet seed of other companies, including that of Zwaanpoly, of course. In short, we are not impressed with the various matters which counsel suggests pose genuine issues of material facts. *See*, in this regard, Bolack v. Underwood, 340 F.2d 816 (10th Cir. 1965), where we held that a motion for summary judgment should be granted in situations where the factual issues sought to be raised are either "irrelevant" or "spurious."

We were at one point at least mildly concerned with that portion of the Wyoming Constitution set forth above which at first blush would appear to say that the truth is a defense only "when published with good intent and [for] justifiable ends," and further that the jury shall have the right to determine "the facts and the law." Because of our concern, we ordered counsel to file supplemental briefs as to the meaning and effect of such language.

As concerns the latter statement that the jury shall determine the facts and the law, counsel for Ando with commendable candor concedes in his supplemental brief that in spite of this language there is "no doubt" but that a trial court in a libel action may in a proper case grant a summary judgment. We, of course, agree that a motion for summary judgment is a matter involving federal procedural law. Counsel's position, then, is, as it has been, that this is simply not a proper case for summary judgment.

As concerns the constitutional language that the truth is a defense when published with "good intent" and for "justifiable ends," certainly on the record there can be no serious contention that Great Western in its several statements was acting with anything other than "a good intent" and for a "justifiable end." *See* Spriggs v. Cheyenne Newspapers, Inc., 63 Wyo. 416, 182 P.2d 801 (1947). Ando himself agreed in his own deposition that Great Western had a legitimate interest in the beet seed used by its contract growers, and further conceded that Great Western in all of its actions had never acted out of malice toward him.

Accordingly, we take no issue with the interpretation given Article I, § 20 of the Wyoming Constitution by the trial court. It would appear proper and we accept the construction thus given it. Binkley v. Manufacturers Life Ins., 471 F.2d 889 (10th Cir. 1973).

Judgment affirmed.