The Chief Justice

delivered the opinion of the court.
This was a motion made by the defendant in error against the now plantiff in the circuit court at Alexandria, under an act of the Virginia assembly, which declares that “ if any sheriff, under sheriff or other officer, shall “ make return on any writ of fieri facias or venditioni “ exponas, that he hath levied the debt, damages or costs “ as in such writ is required, or any part thereof, and “ shall not immediately pay the same to the party to “ whom the same is payable, or his attorney,” “ it shall “ and may be lawful for the creditor at whose suit such “ writ of fieri facias or venditioni exponas,” “ shall is- “ sue, upon a motion made at the next succeeding gene- “ ral court, or other court from whence such writ shall “ issue, to demand judgment against such sheriff, officer or under sheriff, or securities of such under sheriff, for the “ money or tobacco mentioned in such writ, or so much as “ shall be returned, levied on such writs,” “ with interest “ thereon at the rate of 15 per centum per annum from “ the return day of the execution, until the judgment “ shall be discharged; and such court is hereby authorized “ and required to give judgment accordingly, and to “ award execution thereon " provided such sheriff or offi- “ cer have ten days previous notice of such motion.” That Turner had been sergeant of the town of Alexandria, and had returned on a writ of fieri facias, issued on a judgment rendered by the court of hustings for that corpor *130 ation, in favour of Philip Richard Fendall, that he had made the debt and had levied thereon a writ of fieri facias issued on a judgment obtained by William Deneale against Robert Young and Phillip R. Fendall ,merchants, trading under the firm of Robert Young and Co.
Before the next succeeding term of the court of hustings would have arrived, that court was abolished, and all its powers and duties transferred to the circuit court of the district of Columbia for the county of Alexandria.
To the first term of the circuit court notice was given that a judgment would be moved for, and the notice was signed “ Philip Richard Fendall, for the trustees of the said Philip Richard Fendall.”
The defendant did not appear to the notice, and it was continued to the succeeding term, when the parties appeared, and the defendant, to prove that P. R. Fendall had taken the oath of an insolvent debtor and was thereupon discharged, offered in evidence a warrant signed William Herbert and R. West, discharging the said Philip R. Fendall out of custody, as an insolvent debtor, and further offered to prove the hand writing of the said Herbert and West, and also to prove, by oral testimony, that the said Philip Richard Fendall did take the oath of an insolvent debtor before the said William Herbert and Roger West, and that they were on the 21st of March, 1800, the time of administering the said oath and granting the said certificate, magistrates for the county of Fairfax. This testimony was rejected by the court as not being legal evidence to establish the fact, and to this opinion an exception was taken.
The defendant also offered to shew that the trustees of Philip R. Fendall were not entitled to the money levied by virtue of the execution mentioned in the notice, which testimony was likewise rejected by the court; and, to this opinion also, a bill of exceptions was taken.
The defendant then produced the execution issued in favour of Deneale v. Robert Young and Philip R. Fendall, merchants, trading under the firm of Robert Young and Co. with the return thereon, showing that it had *131 been levied on the money of Philip R. Fendall then in his hands, and alleged that the officer had a right and was bound to levy the said execution on the said money, but the court was of opinion that he had not a right so to do, and to this opinion also an exception was taken. The court then proceeded to render judgment, on the notice, for the plaintiff; to which judgment a writ of error has been sued out of this court; and the errors assigned and relied on are,
1st. That the court for the county of Alexandria was not empowered to render judgment in this case at any term subsequent to that next succeeding the return of the execution.
2dly. That the testimony offered to the court to prove the insolvency of Philip R. Fendall, and rejected, was legal testimony to prove the fact for which it was adduced, and ought therefore to have been admitted.
3dly. That the defendant in the court below ought to have been permitted to prove the trustees of Philip R. Fendall not entitled to receive the money to recover which the notice was given, and,
4thly. That the officer had a right to levy the execution of Deneale on the money of Philip R. Fendall in his hands.
To support the first error assigned, the words of the act of assembly giving the motion have been relied on as only empowering the court to render judgment in this summary mode, at the term next succeeding that to which the execution has been returned.
That is, that although the plaintiff has brought his case rightly into court, yet if, from any cause whatever, the court shall be unable to render judgment at the first term, the suit must be dismissed and the plaintiff must lose his remedy. The words must be very plain indeed which will force a court to put upon them so irrational a construction as this. On recurrence to the act relied on it does not appear that a restriction so unusual and so unjust in itself, has been imposed. The words “ such court,” on fair construction, refer to the court in which *132 the motion has been made, and not to the term to which notice was given. The difficulty therefore which would have presented itself, if the notice had been given to a term subsequent to that next succeeding the return of the execution, has no existence in this case.
In considering the second error assigned, the court was satisfied that the proceedings before magistrates, in cases of insolvent debtors, are entirely matters in pais and are therefore to be proved by parol and other testimony. The evidence offered was certainly legal evidence to establish the fact for which it was adduced. The court however is not satisfied of its sufficiency; but without determining that question, and without determining whether in a case where there is no jury, a judgment ought, for the rejection of testimony which was admissible in law, to be reversed in any state of things, or the cause should be considered as if the testimony had been received; it is the opinion of all the judges, that the party is bound to show the relevancy of the fact intended to be established, to the case before the court.
In the present cause the fact to be established was the insolvency of Fendall, which insolvency is not shown to have been material in the case, since nothing appears in the record to induce an opinion that the proceeding could have been in any other name than his.
Although then the testimony rejected was proper and legal evidence towards establishing the fact, yet the court committed no error in rejecting that testimony, for which their judgment ought to be reversed, because the fact does not appear to have been relevant to the cause under their consideration.
On the third error assigned, the opinion of the court is, that whoever might in equity be entitled to the money, or to the use of Fendall’s name, the notice as given could only be sustained by showing the legal right of Fendall to recover. A legal right in the trustees would have defeated the action, for it is instituted in the name of Philip R. Fendall, although it may be for the benefit of his trustees, and neither the reversal or affirmance of this judgment would affect the right of the trustees to proceed in their own names.
*133 The fourth point is one of considerable importance and difficulty. In discussing it two questions have been made at the bar.
1st. Can an execution be levied on money ?
2dly. Can it be levied on money in the hands of the officer ?
The principle that an execution cannot be levied on money has been argued to be maintainable under the authority of adjudged cases, and under the letter and meaning of the act of the Virginia legislature on the subject of executions.
Yet no such adjudged case has been adduced. Lord Mansfield, in the case cited from Douglass 219, said “he “ believed there were old cases where it had been held that the sheriff could not take money in execution even though “ found in the defendant’s scrutoire, and that a quaint “ reason was given for it, viz. that money could not be “ sold,” and it is believed that there may be such cases, but certainly there are also cases in which the contrary doctrine has been held. In 2d Shower 166, it is laid down expressly that money may be taken on a levari facias, and no difference in this respect is perceived between the two sorts of execution. In Dalton’s Sheriff, 145, it is also stated in terms that money may be taken in execution on a fieri facias. The court can perceive no reason in the nature of the thing why an execution should not be levied on money, That given in the books, viz. that it cannot be sold, seems not to be a good one. The reason of a sale is that money only will satisfy the execution, and if any thing else be taken it must be turned into money; but surely, that the means of converting the thing into money need not be used, can be no adequate reason for refusing to take the very article to produce which is the sole object of the execution.
The act of assembly concerning executions has also been relied on as showing that only such articles can be taken as may be sold. But the provisions of the act can only be considered as regulating the sale of such articles as in their nature require to be sold, and not as exempting *134 from execution such property as need not be sold. The object is not the sale but money, and if the money can be made without a sale it cannot be unlawful to do so. But in the case of an execution for tobacco money may be sold, and therefore may be executed, and it would be strange if by an execution ordering a sheriff to make money, money could not be taken, and yet might be taken on an execution ordering him to make some other article.
It is the opinion of the court that money may be taken in execution, if in the possession of the defendant; but the question of greater difficulty is, whether it may be taken by the officer before it has been paid to the person entitled to receive it.
The general rule of law is that all chattels, the property of the debtor, may be taken in execution, and whenever an officer has it in his power to satisfy an execution in his hands, it is his duty to do so, and if he omits to perform his duty he must be accountable to those who may be injured by the omission. But has money, not yet paid to the creditor, become his property ? That is, although his title to the sum levied may be complete, has he the actual legal ownership of the specific pieces of coin which the officer may have received ? On principle the court conceives that he has not this ownership. The judgment to be satisfied is for a certain sum, not for the specific pieces which constitute that sum, and the claim of the creditor on the sheriff seems to be of the same nature with his claim under the judgment, and one which may be satisfied in the same manner. No right would exist to pursue the specific pieces received by the officer, although they should even have an ear mark, and an action of debt, not of detinue, may be brought against him if he fails to pay over the sum received, or converts it to his own use. It seems to the court that a right to specific pieces of money can only be acquired by obtaining the legal or actual possession of them, and until this is done there can be no such absolute ownership as that an execution may be levied on them. A right to a sum of money in the hands of a sheriff can no more be seized than a right to a sum of money in the hands of any other person, and however wife or just it may be to give such a remedy, the law does not appear yet to have given it. The dictum of judge Buller, *135 in the case in 1 Durnford and East 370, proves that the mere possession of money, as a trustee, does not give to the possessor, before a conversion, such a property in it, as to render it liable for his debts ; but does not manifest an opinion that the person for whose use it was received, but to whose possession it has not come, is to be considered as the legal owner of the specific pieces themselves, so that they have become, in contemplation of law, his goods and chattels. Indeed it is observable in that case, that if the money had been due to the parish at the time the bankruptcy of the defendant, who was an overseer of the poor, took place, the parish would have been in no better condition than other creditors, and would have possessed no exclusive property in the money claimed.
Although the dictum of judge Buller may appear to militate somewhat against this position, yet the principle of the decision is in its favor, for the judgment of the court is declared to be founded on the fact that the debt was not a debt till after the bankruptcy.
The case cited from 3d Croke, 166, 176, expressly states the property of the money while in the hands of the sheriff, not to be in the creditor; and although the inference of the court from that principle does not appear to have been warranted, yet the principle itself is believed to be certainly correct.
In the case of Armistead v. Philpot, Doug. 219, the court directed the money of the debtor to be paid to the creditor, whose execution was in the hands of the sheriff holding that money also; but this direction would have been unnecessary if the sheriff had possessed a previous right to make the appropriation.
It is stated in Barnes’ notes, 214, to have been adjudged in trinity term, 32d and 33d of George 2, in the case of Staple v. Bird, where a sheriff had levied an execution on money in his hands, that he should, notwithstanding this execution, pay the money to the person entitled to the benefit of the first judgment. It is true that in that case the person in whose name the judgment was rendered, was not entitled to the money received under it, but the case is not stated to have been decided on that principle ; and *136 the very frequency of such a state of things furnishes an argument of no inconsiderable weight against the right to levy an execution on money so circumstanced. The equitable right of persons, whose names do not appear in the execution, ought to be preserved ; and considerable injustice might result from imposing on the sheriff the duty of deciding at his peril on such rights.
Considering the case then either on principle or authority, it appears to the court that the creditor has not such a legal property in the specific pieces of money levied for him and in the hands of the sheriff, as to authorize that officer to take those pieces in execution as the goods and chattels of such creditor.
But the money becomes liable to such execution the instant it shall be paid into the hands of the creditor ; and it then becomes the duty of the officer to seize it. It appears unreasonable that the law should direct a payment under such circumstances. If the money shall be seized the instant of its being received by the creditor, then the payment to him seems a vain and useless ceremony which might well be dispensed with ; and if the money should, by being so paid, be withdrawn from the power of the officer, then his own act would put beyond his reach, property rendered by law liable to his execution, and which of consequence the law made it his duty to seize.
The absurdity involved in such a construction led the court to a further consideration of the subject.
The mandate of a writ of fieri facias as originally formed, is that the officer have the money in court on the return day, there to be paid to the creditor. Forms of writs furnish strong evidence of what was law when they were devised, and of the duty of the officer to whom they are directed. Originally it was regularly the duty of the officer to have the money in court, and it has been held, that not even payment to the creditor himself could excuse the non-performance of this duty. The rigor of this rule has been considerably relaxed, but the form of the writ, as directed by a late act of the legislature of Virginia, yet is, that the money shall be in court on the return day, and there appears no excuse for omitting this duty, unless *137 it shall have been paid to the creditor. The sheriff may certainly make such payment out of court, if no circumstance occurs which legally obstructs or opposes it, such as an injunction from the court of chancery, in which case, by the law of Virginia, the money must be returned ; or an execution against the goods and chattels of the person to whom the money in his hands shall be payable. In the latter case it seems to the court still to be the duty of the sheriff to obey the order of the writ and to bring the money into court, there to be disposed of as the court may direct. This was done in the case of Armistead v. Philpot, and in that case the court directed the money to be paid in satisfaction of the second execution. This ought to be done whenever the legal and equitable right to the money is in the person whose goods and chattels are liable to such execution.
In the case of Turner and Fendall, the sheriff not having brought the money into court, but having levied an execution on it while in his hands, has not sufficiently justified the non-payment of it to the creditor ; and therefore the court committed no error in rendering judgment against him on the motion of that creditor. If the payment of the damages should be against equity, that was not a subject for the consideration of the court of law which rendered the judgment.
Judgment affirmed.