**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1675**

———————

SYSCO MACHINERY CORPORATION, a Taiwan corporation

      Plaintiff – Appellant,

v.

DCS USA CORPORATION, d/b/a Dorey Converting Systems, a North Carolina corporation

      Defendant – Appellee.

———————

Appeal from the United States District Court for the Eastern District of North Carolina at Raleigh. Terrence W. Boyle, District Judge. (5:23-cv-00134-BO-RJ)

———————

Argued: May 9, 2025                    Decided: July 9, 2025

———————

Before WILKINSON, GREGORY, and RICHARDSON, Circuit Judges.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Gregory and Judge Richardson joined.

———————

**ARGUED:** Ariana Deskins Pellegrino, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellant. Luke Andrew Dalton, MCANGUS GOUDELOCK & COURIE, PLLC, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Christopher E. Hanba, DICKINSON WRIGHT PLLC, Austin, Texas; J. Christopher Jackson, John Kivus, Kenzie M. Rakes, MORNINGSTAR LAW GROUP, Raleigh, North Carolina, for Appellant. Jeffrey B. Kuykendal, MCANGUS GOUDELOCK & COURIE, PLLC, Raleigh, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

In this case, Sysco Machinery Corporation (Sysco) accused DCS USA Corporation (DCS) of business torts arising out of the parties' manufacturer-distributor relationship. Sysco's accusations were conclusory, however, and this is the third civil action in which it tried to make them otherwise. Because Sysco's claims fell short of our pleading standards, the district court dismissed them. And because Sysco engaged in pleading practices that approached bad faith, the district court refused to alter or amend the judgment and denied Sysco post-judgment leave to amend its complaint. We agree with the district court on all points and now affirm the judgment.

## I.

### A.

Sysco is a Taiwanese company that manufactures rotary die cutting machines. DCS is a North Carolina company that distributes them. From 2017 to 2021, the companies worked together to sell machines to American customers. DCS was responsible for securing the customers and identifying each one's unique technical requirements, and Sysco was responsible for producing customized machines that met those requirements. The two companies shared the profits that resulted.

Sysco's fortunes began to sour in April 2021, when a group of Taiwanese employees left the company and launched a competitor named Cymtek Solutions, Inc. (Cymtek). According to Sysco, the employees engaged in "copying, stealing, and misappropriating confidential files and machine layouts" when they departed. J.A. 8. Cymtek and its parent

company Cymmetrik Enterprise Co., Ltd. (Cymmetrik) then used that information to produce "counterfeit" machines. J.A. 9.

After the establishment of Cymtek, DCS arranged at least three transactions in which it sold Cymtek-made machines to customers who had previously purchased, or had initially expressed interest in, Sysco-made machines. Sysco alleges that these "diverted" contracts were worth "millions of dollars." Opening Br. at 20.

### B.

Sysco first filed suit in a Taiwanese court in March 2022. There is "significant dispute" between the parties over the nature of the Taiwanese court's ruling, which was published only in Mandarin. Resp. Br. at 6 n.3. But, according to Sysco, the court ruled in its favor and issued a preliminary injunction against Cymtek. Although DCS was not a party to the Taiwanese action, Sysco sent DCS letters in October 2021 and April 2022 informing it of the Taiwanese action and advising that it "avoid placing orders" from Cymtek. J.A. 451.

Seeking further protection, Sysco registered at least 23 technical drawings related to its rotary die cutting machines with the U.S. Copyright Office in July 2022. J.A. 16–33. Like all unredacted material registered with the Copyright Office, the drawings became available to the public by default. *See* 17 U.S.C. § 705(b) (making copyright registration records open to public inspection).

Sysco then commenced a journey through the courts of the United States that has involved three different stops. In August 2022, Sysco sued DCS, Cymtek, Cymmetrik, and Sysco's former employees in the Eastern District of North Carolina. It brought claims for

3

misappropriation of trade secrets, copyright infringement, trademark infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage. After the court denied Sysco's request for a temporary restraining order and took DCS's request for sanctions under advisement, Sysco asked the court to dismiss the suit. Stipulation of Dismissal Without Prejudice, *Sysco Machinery Corp. v. Cymtek Solutions, Inc.*, No. 5:22-00319 (E.D.N.C. Oct. 18, 2022).

Three days later, Sysco sued Cymtek and Cymmetrik in the District of Massachusetts, where it brought claims for misappropriation of trade secrets, copyright infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage. For reasons it has not sufficiently explained, Sysco declined to inform the court in Massachusetts about the suit that had just been dismissed in North Carolina. The court granted Sysco an ex parte temporary restraining order but then denied it a preliminary injunction and dismissed the suit, and the First Circuit affirmed. *Sysco Machinery Corp. v. Cymtek Solutions, Inc.*, No. 22-11806, 2023 WL 6035672, at *1 (D. Mass. Aug. 9, 2023); *Sysco Machinery Corp. v. Cymtek Solutions, Inc.*, 124 F.4th 32, 35–36 (1st Cir. 2024).

Sysco finally returned to the Eastern District of North Carolina, where it sued DCS once again in March 2023. In this suit, which is the one at issue here, Sysco accused DCS of misappropriation of trade secrets under the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, et seq., and North Carolina's Trade Secrets Protection Act (TSPA), N.C. Gen. Stat. §§ 66-152–66-162. It also brought claims for copyright infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage.

4

Although the group of defendants has evolved in each iteration, this suit concerns precisely the same conduct as the preceding two: Cymtek's alleged theft of Sysco's information and use of that information to sell machines through DCS.

In November 2023, Judge Boyle in the Eastern District of North Carolina dismissed all of Sysco's claims under Rule 12(b)(6) for failure to state a claim. The trade secret misappropriation claim failed, he held, because it was stated in "broad, sweeping terms" that, "absent factual enhancement," lacked the specificity needed to be cognizable. J.A. 807. The copyright infringement claim failed because Sysco's copyright in technical drawings could not "preclude others from manufacturing and marketing the article" depicted in the drawings. J.A. 809. The unfair and deceptive trade practices claim failed because it relied for one of its elements on the trade secret misappropriation claim, and the tortious interference claim failed because DCS was not a third party to the contracts in which it allegedly interfered—contracts between itself and Sysco.

Sysco sought yet another bite at the apple. In December 2023, it asked the district court to alter or amend the judgment and for leave to amend its complaint, arguing that it deserved an opportunity to provide the "factual enhancement" its complaint was missing. J.A. 1318. Judge Boyle denied Sysco's request, finding that Sysco's behavior across its three civil actions "call[ed] into question whether it ha[d] engaged in some form of bad faith pleading practice" and that allowing Sysco to file an amended complaint would prejudice DCS. J.A. 1420. "A dispositive motion," he explained, "is not a 'dry run' for the nonmovant to 'wait and see' what the district court will decide before requesting leave to

5

amend." J.A. 1421 (quoting *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018)).

This appeal followed.

## II.

First, we review the district court's dismissal of Sysco's trade secret misappropriation claim. We consider the issue de novo. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022).

Although we accept the plaintiff's factual allegations as true at the pleadings stage, those allegations must be sufficient to support "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim to relief "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* When it is a claim for trade secret misappropriation under the DTSA or North Carolina's TSPA, it demands plausible allegations both that the plaintiff "possessed a valid trade secret" and that the trade secret was misappropriated. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993).

Here, Sysco plausibly alleged neither component of a trade secret misappropriation claim. We therefore affirm the district court's dismissal of the claim.

## A.

The DTSA and North Carolina's TSPA define a trade secret in substantially the same terms. According to both statutes, a trade secret is information that is subject to "reasonable measures to keep such information secret" and which "derives independent

6

economic value" from its secrecy. 18 U.S.C. § 1839(3); *accord* N.C. Gen. Stat. § 66-152(3). We have described these two requirements as the reasonable secrecy requirement and the independent economic value requirement. *Synopsis, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 769 (4th Cir. 2023). The reasonable secrecy requirement is linked to the independent economic value requirement because the information's value "lies in the competitive advantage over others that [the plaintiff] enjoys by virtue of its exclusive access" to it. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984).

The federal and North Carolina statutes are similar in another way: both require the plaintiff to identify "with sufficient particularity" the trade secret it claims has been misappropriated. *Krawiec v. Manly*, 370 N.C. 602, 609 (2018); *accord Trandes Corp.*, 996 F.2d at 661. At the pleading stage, identifying the trade secret with sufficient particularity means describing the trade secret at a level of detail that enables "a defendant to delineate that which he is accused of misappropriating," *Krawiec*, 370 N.C. at 547, and that enables a court to determine whether the plaintiff has plausibly satisfied the reasonable secrecy and independent economic value requirements, *Synopsis, Inc.*, 70 F.4th at 772–73. Neither the defendant nor the court should be forced into a fishing expedition to find evidence of a valid trade secret in the pleadings.

In this case, we were forced into such a fishing expedition and emerged empty-handed. Sysco's complaint defined its trade secrets twice, first as "Sysco's compilation of machinery, software, and confidential information," J.A. 8, and then as "Sysco's proprietary and confidential information, including the Copyrighted Works, and technical, financial, operations, strategic planning, product, pricing vendor, and customer

7

information," J.A. 48. When pressed at oral argument to define its trade secrets, Sysco pointed to yet a third part of its complaint that described "the technical documents, test videos, statistical data, client contracts, and other confidential information used by Sysco to develop and manufacture" rotary die cutting machines. J.A. 33, 35.

Considered together, these three definitions suggest that nearly Sysco's entire business is a trade secret. That is the type of claim so "sweeping and conclusory" that it is impossible for DCS to know what it has been accused of misappropriating or for the court to assess whether Sysco has met the reasonable secrecy and independent economic value requirements. *Krawiec*, 370 N.C. at 610. The claim is also unlikely to be true in practice, which means that it falls short of "plausible on its face." *Iqbal*, 556 U.S. at 678.

Sysco's trade secret definition runs into another problem: it includes information that is incapable of being a trade secret. As a consequence of the reasonable secrecy requirement, a trade secret is "extinguished" when it is disclosed "to others who are under no obligation to protect the confidentiality of the information." *Ruckelshaus*, 467 U.S. at 1002; *see also DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) ("[A trade secret's] continuing secrecy provides the value, and any general disclosure destroys the value."). As a general matter, the U.S. Copyright Office is under no such obligation for documents that are deposited with it. In fact, the Copyright Act requires the Copyright Office to make deposited documents open to public inspection unless an exception applies. *See generally* 17 U.S.C. § 705(b); *Globeranger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 483 (2016) (5th Cir. 2016) ("[C]opyright protection . . . requires disclosure of the trade secret.").

8

Yet one of the trade secret definitions Sysco used in its complaint includes "the Copyrighted Works," a defined term that encompasses at least 23 apparently unredacted technical drawings deposited with the Copyright Office. J.A. 48. Sysco has not argued that it took any steps to preserve the confidentiality of those drawings or that there is a reason the Copyright Office did not make them open to public inspection. In context, we are convinced that any trade secrets Sysco might have had in those documents were "extinguished" when they were deposited. Sysco clarified at oral argument that it did not mean to include copyrighted works in the definition of its trade secrets, but its burden was to make that clear in the pleadings. The inclusion of copyrighted material is but another reason why Sysco has not plausibly alleged that it possessed a valid trade secret.

## B.

After demonstrating the existence of a valid trade secret, "a plaintiff must show that the defendant has misappropriated it." *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018). Here, too, the DTSA and North Carolina's TSPA contain definitions that are, for our purposes, substantially identical. Misappropriation involves "acquisition," "disclosure," or "use" of a trade secret by "improper means" or without consent. 18 U.S.C. § 1839(5); *accord* N.C. Gen. Stat. § 66-152(1).

The reference to "improper means" in both statutes reflects that "the core" of a misappropriation claim is a "breach of a duty of trust or confidentiality." *Trandes Corp.*, 996 F.2d at 660. A party that acquires another party's information via "lawful means" and that takes on no legal duties with respect to the information cannot be liable for misappropriating it, however objectionable its conduct may seem to the party to whom the

9

information first belonged. 18 U.S.C. § 1839(6)(B). The first Restatement of Torts captured this aspect of the law of trade secrets:

> It is the employment of improper means to procure the trade secret, rather than the mere copying or use, which is the basis of [liability]. . . . Apart from breach of contract, abuse of confidence or impropriety in the means of procurement, trade secrets may be copied as freely as devices or processes which are not secret.

Restatement (First) of Torts § 757 cmt. a (A.L.I. 1939).

In this case, Sysco did not plausibly allege misappropriation because it did not make clear how DCS acquired, disclosed, or used its trade secrets. Sysco argued that, after the establishment of Cymtek, DCS began to fulfill customer orders with Cymtek machines rather than Sysco machines. J.A. 40–42. But it did not explain the manner in which fulfilling customer orders involved disclosing or using Sysco's trade secrets. As the district court noted, "Sysco [did] not even allege that DCS [was] in possession of any of Sysco's 'trade secrets.'" J.A. 738. It is difficult to see how DCS could have acquired, disclosed, or used something it did not possess.

Nor did Sysco make clear why DCS's actions were "improper." Any information DCS possessed about Sysco appears to have been acquired lawfully as part of the parties' ordinary manufacturer-distributor relationship. Sysco did not allege that, prior to the activity at issue, it ever informed DCS that such information contained trade secrets. It is therefore difficult to see what it is about DCS's conduct that involved a breach of duty.

Sysco pointed out that it sent two letters to DCS informing DCS that *Cymtek* had stolen Sysco's trade secrets and warning DCS not to do business with Cymtek. *See, e.g.*, J.A. 671–72. But Cymtek's alleged misappropriation is a different question than DCS's,

10

and Cymtek is not even a party to this case. For the purposes of the trade secret laws, DCS's business relationship with Cymtek is only relevant if DCS itself "acqui[red]," "disclos[ed]," or "use[d]" Sysco's trade secrets as part of that relationship. 18 U.S.C. § 1839(5). Because Sysco did not plausibly allege as much, its claim boils down to "an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## C.

The rationale behind the pleading standards applied to this case is clear. We "insist upon some specificity" when a plaintiff pleads trade secret misappropriation because it is the type of claim that has the potential to seriously disrupt ordinary business relationships. *Twombly*, 550 U.S. at 558.

When businesses enter any multiparty relationship, including the type of manufacturer-distributor relationship at issue in this case, they structure the terms of their relationship according to mutual consent. Contracts agreed upon by the parties provide them with certainty as to the nature of their arrangement and the scope of their potential liability. Economic torts and quasi-torts like trade secret misappropriation can supersede a contractual arrangement under the right circumstances, but the law erects barriers at the pleading stage in order to prevent such liability from being "casually triggered." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012).

On Sysco's view, we should presume that nearly all information a manufacturer considers confidential is a trade secret and that nearly all distributors who sell a manufacturer's products and then begin selling those of a competitor are liable for misappropriation. We decline to adopt those presumptions. Doing so would disincentivize

11

businesses from setting clear, mutually agreeable contractual expectations with their vendors and suppliers about how their information should be handled. It would, instead, incentivize them to leave the terms of their arrangement ambiguous and then allege misappropriation whenever the relationship sours. Many of our economy's most commonplace relationships would erupt in tort litigation. As we said in a similar case, "[t]he implications of that course for the legitimate conduct of business activity would be severe." *Waldrep Bros. Beauty Supply. Inc. v. Wynn Beauty Supply Co.*, 992 F.2d 59, 63 (4th Cir. 1993).

## III.

Next, we consider the district court's dismissal of Sysco's other claims: copyright infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage.

Although Sysco nominally appeals the dismissal of all its claims, it has not developed its argument sufficiently with respect to these three claims to allow us to pass on them. Sysco's entire argument concerning unfair and deceptive trade practices and tortious interference with prospective economic advantage is contained in a single footnote. *See* Opening Br. at 26 n.5; Reply Br. at 2 (quoting the footnote). Its briefs include no argument whatsoever concerning copyright infringement. *See* Opening Br. at 25–46 (failing to address copyright infringement); Reply Br. at 1–16 (same).

Such cursory treatment of claims "normally" constitutes waiver. *Miranda v. Garland*, 34 F.4th 338, 350 (4th Cir. 2022); *see also* Fed. R. App. P. 28(a) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to

the authorities and parts of the record on which the appellant relies."). We therefore affirm the district court's dismissal of Sysco's claims for copyright infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage.

IV.

Finally, we review the district court's denial of Sysco's motion to alter or amend the judgment and for leave to amend the complaint. We consider the issue under an abuse of discretion standard. *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009).

Generally, our circuit "liberally allow[s] amendment" so that cases may be resolved "on the merits, instead of on technicalities." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). The district court may deny leave to amend, however, when granting it would "be futile" or cause "prejudice to the opposing party" or when the moving party has shown "bad faith." *Id.* The district court may also use its discretion to deny leave to amend for other reasons consistent with "what justice so requires." Fed. R. Civ. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "undue delay" and "repeated failure to cure deficiencies" would justify denial). We will decline to disturb a trial judge's discretionary determination about "what justice so requires" unless it was arbitrary or irrational or it relied on faulty premises. *MedCom Carolinas, Inc.*, 42 F.4th at 197.

Here the district court found that Sysco had engaged in bad faith, or something close to it, by filing three civil actions concerning the same underlying conduct and featuring substantially the same defendants and legal claims. The court also found that granting

13

Sysco leave to amend would prejudice DCS because it had already "been required to appear and defend in some fashion in two cases . . . [with] strikingly similar claims." J.A. 1421. Considered together, these findings plainly supported the appropriate exercise of the trial court's discretion.

Given Sysco's failure to state a claim after three opportunities, we are also convinced that the trial court's decision to deny leave to amend reflects a problem with the case's "merits" more than a problem of "technicalities"—precisely the sort of basis on which cases should be resolved. We therefore affirm the district court's denial of Sysco's motion to alter or amend the judgment and for leave to amend the complaint.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

14